MOLLETTE et al., Appellants and Cross–Appellees,

v.

PORTSMOUTH CITY COUNCIL et al., Appellees and Cross–Appellants.

[Cite as *Mollette v. Portsmouth City Council,* 179 Ohio App.3d 455, 2008-Ohio-6342.]

Court of Appeals of Ohio,
Fourth District, Scioto County.

No. 07CA3206.

Decided Nov. 19, 2008.

456

Dagger, Johnston, Miller, Ogilvie & Hampson and D. Joe Griffith, for appellants and cross-appellees.

Schroeder, Maundrell, Barbiere & Powers, Lawrence E. Barbiere, and John W. Hust; and Michael L. Jones, for appellees and cross-appellants. ·

HARSHA, Judge.

{¶ 1} Teresa and Robert Mollette brought this action alleging that the Portsmouth City Council violated the city charter and the Open Meetings Act (R.C. 121.22) when it adopted an ordinance that authorized the mayor to enter into negotiations to purchase a building. The Mollettes alleged that city council reached its decision after deliberating in private sessions in violation of the charter and the statute. In granting summary judgment in favor of the Mollettes, the trial court invalidated the ordinance and enjoined the city council from

deliberating in any executive sessions, i.e., closed to the public. Nonetheless, the Mollettes appeal and argue that the trial court erred in "discounting" its award of attorney fees by calculating them using a local fee structure, rather than using a statewide reasonable-fee standard. However, we do not reach the merits of the Mollette's appeal because the cross-appeal is dispositive of this case.

{¶ 2} In its cross-appeal, the city argues that the Mollettes failed to file their complaint within the one-year time limitation of the statute dealing with certain taxpayer actions. However, the Mollettes brought their action under the Open Meetings Act, which contains its own limitations period. R.C. 121.22(I)(1) (two years). Under rules of statutory construction, where two statutes of limitations could apply to a cause of action, the more specific prevails over the more general. Because the Open Meetings Act provision is the more specific statute, and because the right of action and the limitations period are found in the same subparagraph in the Open Meetings Act, we hold that the two-year statute of limitations found in that law applies to the Mollettes' action.

{¶ 3} Next, the city argues that the Mollettes failed to properly commence their action before the statute of limitations expired because they named the city council, an entity that lacked the capacity to be sued, as the sole defendant in their original complaint. The Ohio Rules of Civil Procedure provide that an action is commenced by the filing of a complaint if service is obtained upon the named defendant within one year after the filing of the complaint. When a defendant is improperly identified or unknown, the rules also allow a plaintiff to amend the complaint to name the proper party. But in order for this amendment to "relate back" to the initial filing date of the complaint, the plaintiff must have obtained service on a defendant with the capacity to be sued within the one-year period provided for commencing the action. Here, the Mollettes sued an entity without the capacity to be sued. And they failed to amend and serve their complaint on a party with the capacity to be sued within the one-year period. Thus, they failed to commence the suit as required by Civ.R. 3(A), and their amendment does not relate back. As a result, they failed to commence the action before the statute of limitations expired. Accordingly, the trial court should have dismissed their action.

## I. Facts[1]

{¶ 4} In early 2002, Portsmouth Mayor Greg Bauer informed members of the Portsmouth City Council that a local business would be closing its doors and that

---

1. To describe this case a "procedural morass" is a vast understatement. Accordingly, we apologize for the opinion's lack of both brevity and clarity. However, knowledge of the facts surrounding the previous proceedings is necessary to understand the basis for our decision here.

its downtown building was available to the city. The city clerk set up two meetings with the Richard D. Marting Foundation representative, attorney Clay Johnson. The city council members purposely met with Johnson in groups of three so that there would not be a quorum for a council meeting. Various members of the city council testified in depositions that they met in these groups of three because they did not want the meetings to be construed as official council meetings. For instance, Councilman Howard E. Baughman III testified that the council "didn't want it even considered that we were making a decision at that time. * * * [Otherwise,] it would appear that we would deliberate on it, and we can't deliberate on it." Councilman Baughman testified that the council did not have discussions as a legislative body and that the meeting with Johnson and the tour of the building was "informational." Councilwoman Maddeline Carol Caudill explained that the council had met in two groups of three because "we cannot have a vote. And so if we had a full council meeting with them, it would have appeared that we were voting on something when we were not. We were only getting information." She explained that she did not remember any negotiations with Marting Foundation representatives at the meeting.

{¶ 5} Councilman James Kalb explained that the Open Meetings Act "was on everybody's mind. Any time there are more than three council members present * * *, that's one of the three criteria involved for the Sunshine Law."[2] In his deposition testimony, Councilman Kalb explained that the city council only received information about the building, including its condition, price, and availability. Councilwoman Ann S. Syndor clarified that "[i]t wasn't a meeting. It was a tour." Former councilwoman Barbara E. Halcomb testified that all that happened at the meeting is that the Marting Foundation representative gave a presentation regarding the organization and purpose of the foundation and that there was a question-and-answer session regarding the condition of the building.

{¶ 6} Later, the city council did discuss the proposed purchase of the building in its formal sessions. However, council members disagreed regarding how many times the council recessed into an "executive session." Councilman Baughman remembered the City Council conducting two executive sessions regarding the Marting building. Councilwoman Caudill and Councilman Kalb remembered only one executive session. Councilwoman Syndor remembered there being several executive sessions, and Councilwoman Halcomb remembered more than one. The city clerk, JoAnn Aeh, testified at the hearing on the parties' cross-motions for summary judgment that there had been only one executive session. She also testified that the council minutes reflect only one executive session taking place.

---

2. The Open Meetings Act is also known as the Sunshine Law.

{¶ 7} On April 22, 2002, the city council held a regular meeting. Even though the council's agenda did not disclose that it would discuss the purchase of the Marting building, the city council recessed into an executive session to discuss buying this property for use as city office space. After the city council reconvened the public meeting, Councilman Pyles moved to add to the agenda an ordinance authorizing the mayor to negotiate a real-estate purchase agreement for Marting building. The other council members agreed and provided a copy of the proposed ordinance to the members of the public. Subsequently, the city clerk gave a first reading to the proposed ordinance. After voting to suspend the rule requiring three readings of the ordinance, the city council adopted the ordinance.

{¶ 8} Three weeks later, on May 13, 2002, the city council held another regular meeting. Like all of the council's regular meetings, this meeting consisted of a legislative session and a conference session. According to the minutes of the legislative session, the council did not discuss the purchase of the Marting building. At the conclusion of the legislative session, the city council held a conference session to discuss pending legislation. The agenda for the conference session included a letter from the mayor regarding the real-estate purchase agreement for the Marting building. Although conference sessions are open to the public, the city council does not prepare minutes. Councilwoman Syndor testified that the council discussed the purchase of the building at length during the conference meeting.

{¶ 9} On May 29, 2002, the city council held its next regular meeting. During the meeting, the council added an ordinance authorizing the mayor to enter into a real-estate purchase agreement for the Marting building "in an amount not to exceed $2,000,000 to be paid for from the proceeds of bond anticipation notes" to the agenda for the legislative session. Subsequently, the city clerk gave a first reading to this ordinance. The council voted to suspend the rule requiring three readings of the ordinance and adopted Ordinance 63–02. The city clerk then gave a first reading to the ordinance authorizing the city to issue the $2,000,000 bond anticipation notes. After voting to suspend the three-reading requirement, the council members also adopted this ordinance. The city council passed both of these ordinances without public discussion at the May 29, 2002 meeting.

{¶ 10} On May 28, 2004, Teresa and Robert Mollette filed suit against "Portsmouth City Council" alleging that Ordinance 63–02 resulted from private deliberations in violation of the Portsmouth City Charter and R.C. 121.22. The city council, represented by the city attorney, responded by filing an answer and a motion for judgment on the pleadings. In the motion, council argued that the one-year statute of limitations in R.C. 733.60 barred the Mollettes' claim. The Mollettes filed a response, arguing that the two-year statute of limitations in R.C.

121.22 governed their claim. In August 2004, the trial court scheduled the matter for an evidentiary hearing. The day before the hearing, the city council filed a "hearing brief" requesting "summary judgment on the pleadings." The trial court held a hearing at which the city clerk and Mrs. Mollette testified. At the conclusion of the hearing, the court converted the city council's motion for judgment on the pleadings into a motion for summary judgment. The Mollettes then filed a cross-motion for summary judgment. They supported their motion with the minutes from the council meetings in April and May, the testimony from the hearing, and the depositions of Mr. Baughman, Mrs. Caudill, Mr. Kalb, Mrs. Sydnor, and Mrs. Halcomb. One week after the Mollettes filed their cross-motion for summary judgment, the city council filed a "formal" summary judgment motion supported by the same evidence relied upon by the Mollettes.

{¶ 11} In November 2004, the trial court denied the city council's motion for summary judgment and granted summary judgment to the Mollettes. The court concluded that the cause of action arose under the Open Meetings Act and that the two-year statute of limitations in R.C. 121.22(I) applied. Additionally, the court concluded that Ordinance 63–02 resulted from private deliberations in violation of R.C. 121.22 and the Portsmouth City Charter. As a result, the court declared the ordinance and the resulting real-estate purchase agreement invalid.

### A. *Mollette I*

{¶ 12} The city council appealed and the Mollettes cross-appealed. After receiving permission from the trial court to intervene as a defendant, the Marting Foundation also appealed. In this court, the Foundation moved to reverse the trial court's judgment and to dismiss the complaint, arguing that the city council is not "sui juris" and lacked the capacity to be sued. Before we could rule on this motion, however, the Foundation dismissed its appeal. One week after the Foundation filed its motion, the city council filed a similar motion. However, in July 2005, we dismissed the city council's appeal and the Mollettes' cross-appeal for lack of a final appealable order.

{¶ 13} When the case returned to the trial court, the Mollettes sought leave to amend their complaint. In their motion, the Mollettes maintained that the city council is sui juris, i.e., had the capacity to be sued. However, they argued in the alternative that they should be allowed to amend their complaint to name the city and the individual members of the city council as defendants. The city council opposed the motion and argued that the trial court should dismiss the case. In September 2005, the court denied the Mollettes' motion, finding that the amendment of the complaint was unnecessary. That same month, the court issued an injunction prohibiting the city council from (1) going into executive session during

its meetings and (2) holding private back-to-back meetings that, taken together, are attended by a majority of council members.

{¶ 14} In the meantime, the trial court granted the Mollettes' motion requesting attorney fees. Furthermore, the court declined to reduce the award, finding that the city council members knew that their actions violated R.C. 121.22 and the charter. In the end, the court awarded the Mollettes a $500 civil forfeiture and $18,317.70 in attorney fees. The trial court based the amount of attorney fees on testimony establishing a reasonable hourly rate in Scioto County. The trial court's decision on attorney fees disposed of the remaining issues in the case.

## B. *Mollette II*

{¶ 15} The parties brought a second appeal, and we reversed the trial court's judgment. Concluding that a city council is not sui juris and cannot be sued in its own right absent statutory authority, we held that the judgment against the city council in this case was void. *Mollette v. Portsmouth City Council,* 169 Ohio App.3d 557, 2006-Ohio-6289, 863 N.E.2d 1092, at ¶ 15, 24. We also held that the trial court had abused its discretion in denying the Mollettes the opportunity to amend their complaint to name the city of Portsmouth and the individual members of the city council as defendants. On the grounds that the city council lacked standing to raise arguments on the behalf of the proper parties, i.e., the individual council members who had not yet been named to the case, we reserved judgment on the city council's arguments that the Mollettes failed to timely commence this action.

{¶ 16} Upon remand, the Mollettes filed an amended complaint seeking to join the city and the individual members of the city council. However, the amended complaint came more than one year after they initially filed suit. The Mollettes also amended their claim for relief in Count IV, dropping their request for mandamus relief and seeking an injunction ordering the city to comply with the charter and to hold open meetings. The parties again filed cross-motions for summary judgment. The trial court decided that the Mollettes' amended complaint related back to the filing of the original complaint, and it incorporated and reaffirmed its prior entries concluding that the charter prohibits executive sessions, enjoining the city from recessing into executive sessions, and awarding the Mollettes attorney fees.

## C. *Mollette III*

{¶ 17} The Mollettes now appeal the trial court's decision to award attorney fees based upon a local reasonable hourly rate rather than a statewide reasonable hourly rate. The city filed a cross-appeal, challenging both the trial court's

decision entering summary judgment in the Mollettes' favor, and the award of attorney fees.

## II. Assignments of Error

{¶ 18} The Mollettes present one assignment of error: "The Trial Court committed plain error in reducing the amount of attorney fees granted to Plaintiff/Appellee/Cross–Appellants."

The city brings eight assignments of error:

1. The trial court erred in finding as a matter of law that the Charter of the City of Portsmouth prohibited City Council from conducting executive sessions as its meetings.

2. The trial court erred in finding as a matter of law that Portsmouth City Council violated the Sunshine Law in adopting Ordinance 63–02.

3. The trial court erred in awarding the Mollettes' attorneys' fees and a civil forfeiture because no violation of the Sunshine Act occurred and because the Mollettes never sought, nor were they granted injunctive relief under a Sunshine Law claim.

4. The trial court erred by refusing to reduce the attorneys' fee award where the evidence established that the Portsmouth City Council could reasonably have believed that it was not violating the Sunshine Law and that its actions served public policy.

5. The Mollettes' claim to enjoin the purchase [of] the real property pursuant to the real estate contract entered into in accordance with Ordinance 63–02 was barred by the one year statute of limitations set forth in R.C. 733.60.

6. Assuming arguendo the two year statute of limitations under the Sunshine Law applied, the trial court erred in holding that the filing of the Plaintiffs' amended complaint related back to the filing of Plaintiffs' original complaint.

7. The trial court erred in denying the City of Portsmouth Defendants' motion for summary judgment on the grounds that the Mollettes' complaint was moot because after the city ordinance, which was the subject of the Mollettes' original complaint was declared void by the trial court, the City of Portsmouth entered into a new transaction and did so in conformity with Ohio's Sunshine Law and the Portsmouth City Charter.

8. The trial court erred in denying the Appellee/Cross–Appellants' motion for summary judgment on its counterclaims that under Section 4 of the Portsmouth City Charter the City is subject to all the duties, requirements and privileges of Ohio's Sunshine Law, R.C. § 121.22.

Because one of the city's assignments of error is dispositive, we address the cross-appeal first.

### III.   Standard of Review

{¶ 19} In reviewing a summary judgment, the lower court and the appellate court utilize the same standard, i.e., we review the judgment independently and without deference to the trial court's determination. *Doe v. Shaffer* (2000), 90 Ohio St.3d 388, 390, 738 N.E.2d 1243. A summary judgment is appropriate only when (1) there is no genuine issue of material fact, (2) reasonable minds can come to but one conclusion when viewing the evidence in favor of the nonmoving party, and that conclusion is adverse to the nonmoving party, and (3) the moving party is entitled to judgment as a matter of law. Id. See also *Bostic v. Connor* (1988), 37 Ohio St.3d 144, 146, 524 N.E.2d 881; Civ.R. 56(C). The burden of showing that no genuine issue exists as to any material fact falls upon the moving party in requesting summary judgment. *Mitseff v. Wheeler* (1988), 38 Ohio St.3d 112, 115, 526 N.E.2d 798. If the moving party satisfies this burden, the nonmoving party then has the reciprocal burden outlined in Civ.R. 56(E) to set forth specific facts showing that there is a genuine issue for trial. If the nonmovant does not satisfy this evidentiary burden and the movant is entitled to judgment as a matter of law, the court should enter a summary judgment accordingly. *Kulch v. Structural Fibers, Inc.* (1997), 78 Ohio St.3d 134, 145, 677 N.E.2d 308.

### IV.   The Statute of Limitations

{¶ 20} The city argues that the Mollettes failed to file their claims alleging violations of the charter and the Open Meetings Act in a timely manner. Specifically, the city contends that the Mollettes' action is governed by the one-year statute of limitations provided in R.C. 733.60. The Mollettes argue that the relevant statute of limitations is found in the Open Meetings Act, which allows a two-year period for bringing an action. This conflict presents a question of statutory interpretation that we review de novo. *Covert v. Ohio Aud. of State*, Scioto App. No. 05CA3044, 2006-Ohio-2896, 2006 WL 1570598, at ¶ 18 ("Generally, statutory construction is a legal issue that appellate courts review de novo").

{¶ 21} R.C. 733.60 imposes a limitations period for taxpayer actions brought under R.C. 733.56 et seq. See *Cuyahoga Falls v. Robart* (1991), 58 Ohio St.3d 1, 3, 567 N.E.2d 987 ("Although [R.C. 733.60] does not expressly refer to cases involving misapplication of funds, when the purported misapplication of funds is the result of an illegal contract, the one-year limitations period of R.C. 733.60 applies"); *Westbrook v. Prudential Ins. Co. of Am.* (1988), 37 Ohio St.3d 166, 169, 524 N.E.2d 485 ("[A]ny action predicated upon R.C. 733.56 and 733.59 must be instituted within the limitation period prescribed by R.C. 733.60"). R.C. 733.56 requires, among other things,[3] that the village solicitor or the city law director

---

3. {¶ a} R.C. 733.56 provides:

seek an injunction in the name of the municipal corporation to restrain "the execution or performance of any contract made in behalf of the municipal corporation in contravention of the laws or ordinance[s] governing it." If the village solicitor or the city law director fails to apply for an injunction after a taxpayer requests that he do so, R.C. 733.59 permits the taxpayer to file an action in her own name on behalf of the municipal corporation. R.C. 733.60, however, provides that "[n]o action to enjoin the performance of a contract entered into or the payment of any bonds issued by a municipal corporation shall be brought or maintained unless commenced within one year from the date of such contract or bond." The city entered into the contract with the Marting Foundation to purchase the building on May 29, 2002, and the Mollettes filed their complaint on May 28, 2004. Thus, if R.C. 733.60 governs, this action is untimely.

{¶ 22} However, the Mollettes brought their complaint alleging a violation of the charter and the Open Meetings Act. R.C. 121.22(I)(1) provides: "Any person may bring an action to enforce this section. An action under division (I)(1) of this section shall be brought within two years after the date of the alleged violation or threatened violation."

{¶ 23} "In making the choice between two statutes of limitations applicable to the same conduct, it is settled law that: 'A special statutory provision which relates to the specific subject matter involved in litigation is controlling over a general statutory provision which might otherwise be applicable.' " *Love v. Port Clinton* (1988), 37 Ohio St.3d 98, 99, 524 N.E.2d 166, quoting *Andrianos v. Community Traction Co.* (1951), 155 Ohio St. 47, 44 O.O. 72, 97 N.E.2d 549, paragraph one of the syllabus; see also *Minster Farmers Coop. Exchange Co. v. Meyer,* 117 Ohio St.3d 459, 2008-Ohio-1259, 884 N.E.2d 1056, at ¶ 25 ("When statutes conflict, the more specific provision controls over the more general provision"). Furthermore, R.C. 1.51 states:

If a general provision conflicts with a special or local provision, they shall be construed, if possible, so that effect is given to both. If the conflict between the provisions is irreconcilable, the special or local provision prevails as an exception to the general provision, unless the general provision is the later adoption and the manifest intent is that the general provision prevail.

{¶ 24} Both statutes of limitations apply to lawsuits seeking to invalidate municipal contracts. R.C. 733.56 et seq. authorizes taxpayer actions to enjoin

---

{¶ b} The village solicitor or city director of law shall apply, in the name of the municipal corporation, to a court of competent jurisdiction for an order of injunction to restrain the misapplication of funds of the municipal corporation, the abuse of its corporate powers, or the execution or performance of any contract made in behalf of the municipal corporation in contravention of the laws or ordinance[s] governing it, or which was procured by fraud or corruption.

"the misapplication of funds of the municipal corporation, the abuse of its corporate powers, or the execution or performance of any contract made in behalf of the municipal corporation in contravention of the laws or ordinance[s] governing it, or which was procured by fraud or corruption." R.C. 733.60 applies to only a subset of cases authorized by R.C. 733.56 et seq.: those seeking to invalidate a municipal contract on the ground that the city lacked the legal authority to enter into it. Nonetheless, the potential grounds for relief are broader than the grounds for relief provided in the Open Meetings Act, which invalidates only those official acts that should have been, but were not, deliberated and enacted at a public meeting. Although the statute of limitations in R.C. 121.22(I) applies to all actions to enforce the Open Meetings Act, including actions seeking a declaratory judgment or an injunction and actions against other public bodies besides municipal corporations, the statute of limitations in R.C. 733.60 applies to taxpayer actions seeking to enjoin the performance of a contract for a variety of reasons besides the failure to hold an open meeting. Thus, the statutory provisions authorizing taxpayer actions are more general that the statutory provisions enacting the Open Meetings Act.

{¶ 25} We conclude that the two-year statute of limitations provided in R.C. 121.22(I)(1) applies to this action. Not only did the General Assembly place this limitations period in the same statute granting individuals the right to sue for violations of the Open Meetings Act, the limitations period appears in the next sentence in the same subparagraph. We believe that it would be incongruous to conclude that an action brought under the Open Meetings Act was not subject to the statute of limitations found in that very act. Furthermore, despite the fact that the Open Meetings Act was enacted after R.C. 733.60, the Open Meetings Act does not demonstrate any legislative intent that some claims brought under the act be limited by the one-year limitations period found in R.C. 733.60. See also *Koncsol v. Niles* (1995), 105 Ohio App.3d 535, 538, 664 N.E.2d 616 (explaining that the placement of the statute of limitations in the same code chapter as the right to sue a political subdivision reinforces the analysis that the more specific statute prevails over the more general). Accordingly, we overrule the city's fifth assignment of error.

## V. Relation Back of the Amended Complaint

{¶ 26} In its sixth assignment of error, the city argues that the Mollettes' amended complaint naming the city as a party did not relate back to the filing of the initial complaint and, therefore, was untimely under the two-year statute of limitations of R.C. 121.22(I)(1).

{¶ 27} First, the city argues that the failure to name a legal entity rendered the Mollettes' initial complaint a nullity. Under the city's reasoning,

even if the amended complaint had been served within one year of the initial complaint, the relation-back doctrine could not apply because there was no valid initial complaint upon which the relation-back doctrine could operate. We disagree.

{¶ 28} In *Baker v. McKnight* (1983), 4 Ohio St.3d 125, 4 OBR 371, 447 N.E.2d 104, the plaintiff was injured in an automobile accident and filed a lawsuit against the allegedly negligent defendant. After negotiations with the defendant's insurance carrier failed, the plaintiff filed a lawsuit against the defendant. However, by the time she filed her complaint, the defendant had died, and the statute of limitations expired before the plaintiff learned of the defendant's death. The plaintiff moved to amend her complaint to substitute the defendant's administrator for the defendant. The trial court, relying on the principle articulated by the court in *Barnhart v. Schultz* (1978), 53 Ohio St.2d 59, 7 O.O.3d 142, 372 N.E.2d 589, that a deceased person is not a legal entity and therefore cannot be a party to a lawsuit, dismissed the complaint. "Because a party must actually or legally exist 'one deceased cannot be a party to an action' and a suit brought against a dead person is a nullity." Id. at 61, 7 O.O.3d 142, 372 N.E.2d 589, quoting *Brickley v. Neuling* (1950), 256 Wis. 334, 336, 41 N.W.2d 284.

{¶ 29} The court in *Baker* overruled the holding in *Barnhart* that the relation-back doctrine cannot apply to a complaint naming a dead person. Instead, the court treated the case as one involving a misnomer, explaining that the real party in interest was the administrator, not the decedent. Thus, even though the plaintiff's complaint named as defendant a legal nonentity, the deceased, it was not true that " 'there was no complaint against an existing party for the amended complaint to relate back to.' " *Baker*, 4 Ohio St.3d at 127, 4 OBR 371, 447 N.E.2d 104, quoting *Barnhart*, 53 Ohio St.2d at 62, 7 O.O.3d 142, 372 N.E.2d 589. Accordingly, the court rejected the same "nullity" theory that the city puts forward.

{¶ 30} Similarly, in *Hardesty v. Cabotage* (1982), 1 Ohio St.3d 114, 1 OBR 147, 438 N.E.2d 431, the plaintiff filed a malpractice action naming the "Board of Trustees of Blanchard Valley Hospital" as defendant. However, the entity that the plaintiff actually attempted to sue was "Blanchard Valley Hospital Association, Inc." ("the hospital"). Thus, the plaintiff's original complaint named what was, technically, a legal nonentity. After the statute of limitations expired but within one year of filing the initial complaint, the plaintiff filed an amended complaint naming the proper defendant—the hospital. The plaintiff served both the original and the amended complaint at the same address, and the same hospital employee accepted service. The hospital moved to dismiss the complaint on the grounds that the statute of limitations had expired and that "there was no

entity to which such relation back could apply." *Hardesty* at 116, 1 OBR 147, 438 N.E.2d 431. The trial court dismissed the complaint.

{¶ 31} The Supreme Court reversed, concluding that "in the original complaint, an existing defendant was improperly named and served." *Hardesty* at 116–117, 1 OBR 147, 438 N.E.2d 431. Thus, notwithstanding the fact that the plaintiff technically brought the action against a nonexistent entity, the plaintiff timely commenced his action because the amended complaint related back to the initial complaint.

{¶ 32} The city relies on *Patterson v. V & M Auto Body* (1992), 63 Ohio St.3d 573, 589 N.E.2d 1306, for the proposition that a complaint brought against an entity that is not sui juris is a nullity. However, the court in *Patterson* did not hold that a complaint naming a legal nonentity is a nullity and that, therefore, an amended complaint naming a legal entity cannot relate back to an original complaint naming a legal nonentity. Those issues never arose because the plaintiff never amended his complaint.

{¶ 33} In *Patterson*, the plaintiff named a sole proprietorship as the defendant. The owner of the sole proprietorship notified the plaintiff on three occasions that the plaintiff had sued an entity without the capacity to be sued. However, the plaintiff did not amend his complaint, and over the defendant's objections, the case proceeded to trial and judgment in favor of the plaintiff. The Supreme Court reversed, holding that no action had been commenced pursuant to Civ.R. 3(A) because the plaintiff never served the complaint on a proper defendant or upon "an incorrectly named defendant whose name is later corrected" in an amended complaint. Thus, the judgment was void. However, the Supreme Court explained that it would have been within the trial court's discretion to substitute the owner of the business for the business named in the complaint had the plaintiff moved to amend the complaint.

{¶ 34} Based upon *Baker*, *Hardesty*, and *Patterson*, we reject the city's argument that the Mollettes' original complaint was a nullity that could not serve as a basis for the application of the relation-back doctrine.

{¶ 35} Next, the city argues that the Mollettes' amended complaint cannot relate back to the original complaint because the Mollettes failed to serve an entity that was sui juris within one year of filing the original complaint. Thus, they argue, the action cannot be deemed commenced at the filing of the original complaint, and the Mollettes' action is barred by the statute of limitations. The Mollettes argue that they did not need to serve the amended complaint within the one-year period provided by Civ.R. 3(A) as long as the proper defendants had

notice of the action within one year from the date they filed their original complaint. We begin our analysis with the language of Civ.R. 3(A) and 15(C).

{¶ 36} Civ.R. 3(A) addresses the commencement of an action and states:

A civil action is commenced by filing a complaint with the court, if service is obtained within one year from such filing upon a named defendant, or upon an incorrectly named defendant whose name is later corrected pursuant to Civ.R. 15(C), or upon a defendant identified by a fictitious name whose name is later corrected pursuant to Civ.R. 15(D).

{¶ 37} Civ.R. 15 provides for amended and supplemental pleadings. Under Civ.R. 15(C), an amendment changing a party may relate back to the filing date of the original complaint for purposes of applying the statute of limitations. That rule provides:

Whenever the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, the amendment relates back to the date of the original pleading. An amendment changing the party against whom a claim is asserted relates back if the foregoing provision is satisfied and, within the period provided by law for commencing the action against him, the party to be brought in by amendment (1) has received such notice of the institution of the action that he will not be prejudiced in maintaining his defense on the merits, and (2) knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against him.

{¶ 38} The Supreme Court of Ohio has construed the language "within the period provided by law for commencing the action" in Civ.R. 15(C) to refer to the time allowed for effectuating service of a party under Civ.R. 3(A)—one year—not the applicable statute of limitations. *Cecil v. Cottrill* (1993), 67 Ohio St.3d 367, 371, 618 N.E.2d 133. Thus, in order for an amended complaint to relate back to an initially filed complaint, the action must be properly and timely commenced pursuant to Civ.R. 3(A), which requires service of process within one year, and the requirements of Civ.R. 15(C), which requires actual notice to the proper party within one year, must also be met.

{¶ 39} Caselaw supports this construction. In *Baker*, 4 Ohio St.3d 125, 4 OBR 371, 447 N.E.2d 104, the defendant died between the accrual of the cause of action and the filing of the complaint, and the plaintiff unknowingly filed suit against the decedent rather than his estate. Although the statute of limitations had run before the plaintiff filed her amended complaint substituting the administrator for the decedent, the court allowed the amendment to relate back "when the service on the administrator is obtained within the one-year, post filing period provided for in Civ.R. 3(A)." *Baker*, supra, at syllabus. Thus, the court

explicitly required any amendment substituting the administrator for the decedent to occur within the one-year period set forth in Civ.R. 3(A).

{¶ 40} We find *Baker* to be on point. In *Baker*, the plaintiff named and attempted to serve a complaint on a party that no longer existed, i.e., the decedent. The court held that the initial complaint was not a nullity, but it did not suffice to commence the action under Civ.R. 3(A). Instead, the plaintiff had to serve the proper party, the decedent's estate, within the one-year limitation period of Civ.R. 3(A) in order for the action to be deemed timely commenced. Likewise, the Mollettes named an entity that was not sui juris. But unlike the plaintiff in *Baker*, they failed to serve their amended complaint on the proper parties within the one-year period provided in Civ.R. 3(A) for effectuating service. Applying *Baker*, we conclude that the Mollettes failed to timely commence their action.

{¶ 41} The Mollettes rely on the Supreme Court of Ohio's decision in *Cecil*, 67 Ohio St.3d 367, 618 N.E.2d 133, for the proposition that their original complaint commenced this action notwithstanding the fact that they failed to serve the city and the individual members of the city council within the one-year period provided by Civ.R. 3(A). However, we believe that *Cecil* is distinguishable on its facts. In *Cecil*, the plaintiffs brought suit against "James C. Cottrill," the owner of the vehicle and father of the driver, rather than his son, "James L. Cottrill," who was the tortfeasor and proper defendant. The plaintiffs moved to amend their complaint to name James L. as the defendant more than 17 months after the complaint had been filed and after the statute of limitations had expired. The Supreme Court held that the amended complaint related back to the initial complaint, emphasizing that the proper party had notice of the action at the filing of the complaint. The court explained that "[n]otice is the essential reason for service. There is no question that * * * the party intended to be sued was indeed provided adequate notice of such suit." *Cecil* at 371, 618 N.E.2d 133. Thus, the Mollettes argue, because the proper parties had adequate notice of this lawsuit, they did not need to serve the amended complaint on the city of Portsmouth and the individual members of the city council within one year from the filing of the initial complaint.

{¶ 42} Unlike the Mollettes, however, the plaintiff in *Cecil* named a party that had the capacity to be sued, i.e., the father. And the plaintiff commenced the action by serving his complaint on that named party, even though the father was not the real party in interest. Doing so commenced the action for purposes of Civ.R. 3(A), and the plaintiff in *Cecil* only had to comply with Civ.R. 15(C) in order for the amended complaint to be deemed timely filed. Civ.R. 15(C) requires notice of the action—not personal service—within the time period provided Civ.R. 3(A). In contrast, the Mollettes' complaint named an entity that

did not have the capacity to be sued. Furthermore, the Mollettes did not serve the complaint on a party with capacity to be sued within one year of filing the original complaint. Thus, the Mollettes failed to accomplish service of process of the initial complaint within the period required by Civ.R. 3(A), and thus, they failed to commence the action.

{¶ 43} Furthermore, the court in *Cecil* suggested that the plaintiff in that case had merely inadvertently misspelled the defendant's name by using the wrong initial. The same cannot be said for the Mollettes, who brought suit against an entity that lacked the capacity to be sued. We also disagree with the Mollettes' contention that they were simply "mistaken as to the proper name of the defendants." They were not mistaken about the name of the party to be sued; they were mistaken about their ability to sue the entity in its own name. However, the law was clear at the time they filed their complaint that the Portsmouth City Council was not sui juris.

{¶ 44} More important, the court in *Cecil* did not expressly hold that a plaintiff can commence an action under Civ.R. 3(A) without serving a codefendant with the capacity to be sued within one year from filing the action. The father, who was initially named, had the capacity to be sued and he was served within the time provided by Civ.R. 3(A). Furthermore, given that the court did not explain its reasoning in allowing the amended complaint to relate back despite the failure of untimely service, other legal theories such as estoppel could have served as the basis of the court's decision. In *Cecil*, the facts suggested that the real defendant was aware that the plaintiff had named the wrong party but took steps to delay the plaintiff from learning of the mistake and then, upon the expiration of the one-year period, pulled the failure of service like a rabbit from a hat. In this case, however, there is no indication that the city was aware of the Mollettes' mistake and waited until the time for service had run. In fact, the city raised the defense that the city council was not sui juris within the one-year period of Civ.R. 3(A). Moreover, equitable estoppel may not have been available against the city. See, e.g., *Hortman v. Miamisburg*, 110 Ohio St.3d 194, 2006-Ohio-4251, 852 N.E.2d 716, at ¶ 25 (holding that "the doctrines of equitable estoppel and promissory estoppel are inapplicable against a political subdivision when the political subdivision is engaged in a governmental function").

{¶ 45} However, the Mollettes could have filed and served an amended complaint on the city and the individual members of the city council within one year from the initial complaint, and, if they satisfied the requirements of Civ.R. 15(C), their amended complaint would relate back to the filing date of the initial complaint for purposes of the statute of limitations. *Baker*, 4 Ohio St.3d 125, 4 OBR 371, 447 N.E.2d 104, at syllabus. The Mollettes failed to do so, despite having notice of the defect in their initial complaint before the one-year period of

Civ.R. 3(A) elapsed. The Mollettes apparently first became aware that they had sued a defendant who cannot be sued while the first appeal in this case was pending. On February 17, 2005, they filed a motion in this court seeking leave to amend their complaint. The one-year period provided in Civ.R. 3(A) for effectuating service expired on May 28, 2005. However, the Mollettes argued, and we agreed, that we lacked jurisdiction over the appeal because the trial court's order was not final and appealable. Without jurisdiction, we did not and could not address the motion for leave to amend. But because we never acquired jurisdiction over the appeal, the trial court was not divested of jurisdiction over the case. See *State ex rel. Everhart v. McIntosh,* 115 Ohio St.3d 195, 2007-Ohio-4798, 874 N.E.2d 516, ¶ 14 ( "[A] premature notice of appeal * * * does not divest the trial court of jurisdiction to proceed because the appeal has not yet been perfected"). However, the Mollettes did not file their motion to amend in the trial court until July 26, 2005, after the one-year period for effectuating service had elapsed.

{¶ 46} Nor do we believe that *Fields v. Dailey* (1990), 68 Ohio App.3d 33, 587 N.E.2d 400, also relied upon by the Mollettes, leads us to a different result. In *Fields,* the defendants argued that the action should be dismissed because the plaintiff sued the Columbus Police Department, which lacked the capacity to be sued, rather than the city of Columbus. The court rejected this argument, noting that at all times that the city attorney had adequately represented the interests of the proper party and that "any deficiency in plaintiff's complaint was purely technical and did not prejudice defendants." Id. at 45, 587 N.E.2d 400. The court also concluded that "[t]o the extent defendants claim the police department lacks the legal capacity to be sued, such matter must be raised in the answer by specific negative averment. Civ.R. 9(A). Defendants' failure to aver the lack of legal capacity of the police department supports the decision of the trial court to deny defendants' Civ.R. 50(A) motion." *Fields* at 45, 587 N.E.2d 400.

{¶ 47} However, we reaffirm our prior holding that where the named defendant lacks the capacity to be sued, failure to raise the issue of that defendant's non-sui-juris status in a responsive pleading does not constitute waiver of the issue. *Mollette II* at ¶ 24. On our own motion, we directed the parties to file briefs discussing the appropriateness of reconsidering our holding in *Mollette II* that a non-sui-juris entity cannot waive its lack of capacity to be sued. After due consideration, we adhere to our holding in that case. But to the extent that *Mollette II* described the city council as a legal nonentity, rather than as a legal entity lacking capacity, it was erroneous. We relied in part on our erroneous conclusion that the city council was not a legal entity in deciding that it could not waive the lack-of-capacity defense. However, the city council is a legal entity. The Ohio Revised Code distinguishes between the "legislative authority" and the "members of the legislative authority." R.C. 731.01; R.C. 731.04; R.C.

731.05. This distinction demonstrates that the city council, as the legislative authority, has a legal existence separate from its individual members in their legislative capacity. Moreover, R.C. 731.05 grants the legislative authority power to act in many capacities. Thus, the city council is a legal entity, albeit one that lacks capacity to sue or be sued. However, that oversight does not change our conclusion that an entity without capacity to sue or be sued can neither initiate nor defend a lawsuit. Thus, waiver does not apply.

{¶ 48} Finally, the Supreme Court of Ohio has previously considered and rejected the argument that amending a complaint is a mere technicality:

The plaintiff has urged that [the proper defendant's] appearance and defense enabled the court to reach the merits of the case, and that amendment of the complaint was an unnecessary technicality. This court has said: "The spirit of the Civil Rules is the resolution of cases upon their merits, not upon pleading deficiencies. * * *" *Peterson v. Teodosio*, [34 Ohio St.2d 161, 175, 63 O.O.2d 262, 297 N.E.2d 113]; accord *Baker v. McKnight*, supra, 4 Ohio St.3d at 129, 4 OBR at 374, 447 N.E.2d at 107. The case law illustrates the liberality with which Ohio courts will permit amendments to cure defective pleadings. These holdings do not, however, stand for the proposition that amendments are unnecessary, that where defects appear they may be ignored.

*Patterson* at 576–577, 589 N.E.2d 1306. For these reasons, we decline to follow *Fields*.

{¶ 49} Finally, the dissent relies upon our decision in *Marcinko v. Carson*, Pike App. No. 04CA723, 2004-Ohio-3850, 2004 WL 1615938, to conclude that the Mollettes' complaint relates back. We do not share that conclusion because *Marcinko* is factually distinguishable. Contrary to the dissent's implication that the one-year period set forth in Civ.R. 3(A) for commencing an action had expired, the opinion notes otherwise. The accident between Marcinko and Carson occurred on October 29, 2001. The Marcinkos filed their complaint on October 6, 2003, within the two-year limitations period. Thus, they had until October 7, 2004 to obtain service on a party with the capacity to be sued in order to properly commence their action under Civ.R. 3(A). However, the "defendant" filed a motion to dismiss on November 3, 2003, and the trial court dismissed the complaint on December 2, 2003, well before the one-year period for obtaining service had run. In fact, the Marcinkos filed their notice of appeal on January 2, 2004, but also filed a post-dismissal motion for leave to amend their complaint and substitute the administrator of the estate for the "defendant." This motion to amend clearly occurred prior to the passage of the one-year period set in Civ.R. 3(A) as the trial court filed an entry on January 23, 2004, addressing that issue without resolving it. Thus, *Marcinko* is clearly distinguishable. Had the Mollettes sought leave to amend their complaint to add the proper parties prior to

the expiration of the one-year period, we would be faced with a different issue. But those are not the facts before us, nor does *Marcinko* control the facts that are.

{¶ 50} We agree with the city that the Mollettes did not commence their action within the time provided by the statute of limitations. Because the Portsmouth City Council is not sui juris, filing a complaint naming it as the sole defendant did not in itself commence this action before the limitations period elapsed. Because the Mollettes failed to serve an amended complaint on a party with the capacity to be sued within the one-year period provided by Civ.R. 3(A), the amendment could not relate back for purposes of the statute of limitations. Therefore, the trial court erred in denying the city's motion for a summary judgment and in entering a summary judgment in favor of the Mollettes.

## VI. The Parties' Other Assignments of Error

{¶ 51} Based on our determination that the Mollettes have failed to file a timely complaint and commence this action, all other assignments of error raised in the Mollettes' appeal and the city's cross-appeal are rendered moot.

## VII. Conclusion

{¶ 52} We hold that the two-year statute of limitations applies in actions challenging ordinances adopted in violation of the Open Meeting Act as incorporated by the city charter. But because the Mollettes failed to serve a legal entity with the capacity to be sued, they failed to commence their action within the applicable statute of limitations. Moreover, because this action was never commenced, the trial court erred in concluding that the amended complaint related back to the initial complaint naming the city council as a party. Accordingly, we reverse the judgment below and remand the cause with instructions to enter judgment in favor of the city.

Judgment reversed
and cause remanded.

ABELE, P.J., concurs.

KLINE, J., dissents in part.

KLINE, Judge, dissenting in part.

{¶ 53} I respectfully dissent in part. I agree with the majority in its conclusion regarding the applicable statute of limitations. However, unlike the majority, I believe that the amended complaint relates back to the original complaint.

{¶ 54} I find that our prior case of *Marcinko v. Carson*, Pike App. No. 04CA723, 2004-Ohio-3850, 2004 WL 1615938, ¶ 26–27, controls this issue. In

*Marcinko,* the defendant died before service was achieved. Id. at ¶ 13. After the statute of limitations ran, the decedent's representative made an appearance and moved the court to dismiss the case. Id. at ¶ 14. Despite the fact that the motion for leave was not granted within the one-year period, we found that the administrator of the estate had actual notice and that once the amended complaint was formally filed, it would relate back to the original complaint. Id. at ¶ 26–27.[4] I also observe that in the *Cecil* case, the original complaint was filed on the day the statute of limitations ran but permission to file an amended complaint that properly named defendant did not occur until 16 months later. *Cecil v. Cottrill* (1993), 67 Ohio St.3d 367, 367–368, 618 N.E.2d 133.

{¶ 55} Here, there is no dispute that the city had actual notice of the lawsuit and knew that it was the proper party before the one-year period for service expired. In fact, while this case was on appeal the first time, the city made the argument to this court that the city council was not sui juris and was improperly named. In the prior appeal, we remanded the case, ordering the trial court to allow the Mollettes to amend their complaint, which they did. I would, therefore, rely on *Marcinko* and overrule the assignment of error.

{¶ 56} Accordingly, I dissent in part.

---

**4.** The majority opinion states that service was not perfected within a year. I respectfully disagree. While this case was on its first appeal, the city was served with the motion for leave to amend during the one-year period. This service was sufficient under Civ.R. 3(A). See Civ.R. 5(B)(permitting service on the party's attorney); *Ervin v. Patrons Mut. Ins. Co.* (1985), 20 Ohio St.3d 8, 20 OBR 80, 484 N.E.2d 695 (suggesting an attorney of record could be served with an amended complaint even without service on the first complaint); *Knotts v. Solid Rock Ents., Inc.,* Montgomery App. No. 21622, 2007-Ohio-1059, 2007 WL 715998, ¶ 42, 45; *O'Brien v. Citicorp Mtge., Inc.* (Feb. 12, 1994), Franklin App. No. 93AP–1074, 1994 WL 57675 (stating that an amended complaint not asserting new claims can be served by regular service). See also *Reighard v. Cleveland Elec. Illuminating Co.,* Mahoning App. No. 05MA120, 2006-Ohio-1283, 2006 WL 696125, ¶ 44–46 (finding that when reading the rules in pari material, notice, but not necessarily service, on the properly named defendant must occur within one year); *Guerrero v. C.H.P., Inc.* (Aug. 16, 2001), Cuyahoga App. No. 78484, 2001 WL 931640 (holding that the filing of a motion for leave to file an amended complaint with the amended complaint attached satisfies the service requirement).