[Cite as *Campbell v. Schlegel*, 2015-Ohio-2808.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
### DEFIANCE COUNTY

TAMMY CAMPBELL, ET AL.,

    PLAINTIFFS-APPELLANTS,                CASE NO.  4-14-19

    v.

AMY D. SCHLEGEL,                           O P I N I O N

    DEFENDANT-APPELLEE.

Appeal from Defiance County Common Pleas Court
Trial Court No. 12-CV-42214

**Judgment Reversed and Cause Remanded**

Date of Decision:  July 13, 2015

APPEARANCES:

    *Brian W. Kaiser*  for Appellant

    *J. Alan Smith*  for Appellee

Case No. 4-14-19

**ROGERS, P.J.**

{¶1} Plaintiffs-Appellants, Tammy Campbell ("Tammy"), Kelsie Campbell ("Kelsie"), Kasey Campbell ("Kasey"), and Brian Campbell ("Brian") (collectively "the appellants"), appeal the judgment of the Court of Common Pleas of Defiance County, which granted summary judgment in favor of Defendant-Appellee, Amy Schlegel, and denied their motion to amend their complaint. On appeal, the appellants argue that the trial court erred: (1) in finding that their amendment to the complaint would not relate back under Civ.R. 15(C); (2) in finding that the amended complaint would necessarily be barred by Civ.R. 3(A) and the applicable statute of limitations; and (3) by not allowing evidence regarding the legal representation of Amy and her family. For the reasons that follow, we reverse the trial court's judgment.

{¶2} On December 14, 2012, Tammy, Brian, and Kasey[1] filed a complaint against Amy. In their complaint, they alleged that on December 17, 2010, Amy was operating a 2003 Chevrolet Impala and negligently operated her vehicle resulting in a collision with Tammy's vehicle. On that same day, Kelsie filed a separate complaint alleging nearly identical facts in the Campbells' complaint.

---

[1] We note that there is an inconsistent spelling of "Kasey" throughout the record. Since she testified at her deposition that the correct spelling of her name is "Kasey" that is what we will refer to her throughout this opinion.

Both complaints repeatedly referred to Amy as the operator of the vehicle that caused the car accident.

{¶3} Amy filed her answers to both complaints on January 4, 2013. Amy generally denied the allegations in both complaints and asserted several affirmative defenses.

{¶4} On November 12, 2013, the trial court consolidated the two cases as both causes of action arose from the same set of facts. (Docket No. 11).

{¶5} Amy filed a motion for summary judgment on May 14, 2014. In her motion, Amy asked the court to grant summary judgment in her favor as it was undisputed that she was not involved in the motor vehicle accident. Instead, it was her daughter, Katelyn Schlegel, who was operating the motor vehicle the day of the accident. In support of her argument, Amy attached the police report to her motion, which stated that Katelyn was the driver of Unit #2 and Jacob Schlegel, her son, was the occupant of Unit #2. The report identifies Amy as the owner of the vehicle that Katelyn was driving. *See* (Docket No. 17, Exhibit F, p. 1, 5).

{¶6} Amy also argued that the Campbells' claim against Katelyn had expired under the two-year statute of limitation, and that they could not rely on Civ.R. 15(C) to file an amended complaint as there was no mistake concerning the identity of the proper party. In the alternative, Amy argued that the Campbells'

complaint could not be amended under Civ.R. 3(A) since the time had expired for proper service of the complaints.

{¶7} The Campbells filed their response to Amy's motion for summary judgment and a request for leave to file an amended complaint on July 3, 2014. They argued that they should be allowed to amend their complaint and add Katelyn as the proper defendant since their misnaming of the defendant was a misnomer.

{¶8} The trial court held a hearing on the Campbells' motion to amend the complaint on September 16, 2014. At the hearing, the Campbells called Katelyn to testify. Katelyn testified that she was married November 24, 2012, and is now known as Katelyn Ruiz. She stated that she remembered the car accident and that it occurred while she was on her way to school. Katelyn then had the following exchange:

Q: Okay. So, following the initial discussion of this accident with your parents, I assume you had some follow-up conversation with them at a later date about it; is that correct?

A: Just when they told me I was, uh, my mom was actually getting sued. That's when we started talking about it.

Q: Okay. So, how, when did that come about? Do you recall?

A: It hasn't been that long, maybe six months, a year, if that.

Q: Six months, a year, that she stated she was being sued?

A: She said that I might get a call, and I was to contact my lawyer – well, her lawyer.

Q: Did she tell you why you might get a call?

A: No. She didn't really discuss her business with me.

* * *

Q: Okay. And you never got a call about it from anyone, I assume the insurance company, attorneys, anybody?

A: No.

Sept. 16, 2014 Hearing, p. 11-13.

{¶9} Katelyn testified that she moved out of her parents the night of her 18th birthday, which was October 27, 2011.

{¶10} Amy then testified that she received the Campbells' complaints sometime near Christmas a year or two after the accident. After receiving the complaints, she contacted her insurance company. She stated that her insurance company provided her with an attorney. She then had the following relevant exchange:

[Amy]: But to say exactly, I just told [the insurance company] I don't understand why I was getting [the complaints] and – and, uh, and like I said it had been a year or two after the accident. So, it was – I mean I

The Court: Did you recognize that these suit papers related – that those had to do with your daughter being in the car?

> [Amy]: I didn't at the time until, um, when I first received them I didn't, but then when I called the insurance company, my agent here in town, and told them that I had received them, and then they had said, they had told me that it was due to an accident that Katelyn was involved in.

*Id.* at p. 29-30.

{¶11} Amy stated that it was her belief that the insurance company was handling the matter for herself, not Katelyn. *Id.* at p. 33. Amy then testified that she did not tell Katelyn about the lawsuit right away. She explained,

> I didn't say anything to Katelyn until after I spoke with the lawyer. Because like I said, I wasn't really sure what it pertained to, 'cause like I said, it listed me as driving her car. So I didn't know if it was supposed to be for me, because I own the car. 'Cause that was what my agent said, "Well, maybe it's because the car is in your name."

*Id.* at p. 36.

{¶12} However, Amy admitted that she told Katelyn about the complaint a few weeks after being served. *Id.* at p. 35-36. She also admitted that she realized the complaint mistakenly named herself as the driver of the car and that she brought this mistake to her insurance agent's attention. *Id.* at p. 31.

{¶13} On October 24, 2014, the trial court filed its judgment entry wherein it denied the Campbells' request to amend the complaint and dismissed all claims against Amy.

{¶14} The Campbells timely appealed this judgment, presenting the following assignments of error for our review.

*Assignment of Error No. I*

**THE TRIAL LOWER [SIC] COURT ERRORED [SIC] IN FINDING THAT THE AMENDMENT TO THE COMPLAINT WOULD NOT RELATE BACK UNDER CIVIL RULE 15(C).**

*Assignment of Error No. II*

**THE LOWER COURT ERRORED [SIC] IN FINDING THAT THE CLAIMS IN THE AMENDED COMPLAINT WOULD NECESSARILY BE BARRED BY CIVIL RULE 3(A) AND THE APPLICABLE STATUTE OF LIMITATIONS.**

*Assignment of Error No. III*

**THE LOWER COURT ERRORED [SIC] IN NOT ALLOWING EVIDENCE REGARDING LEGAL REPRESENTATION.**

{¶15} Due to the nature of the assignments of error, we elect to address the first and second assignments together.

*Assignments of Error Nos. I & II*

{¶16} In their first and second assignments of error, the Campbells argue that the trial court erred in finding that Civ.R 3(A) would necessarily bar any claims raised in an amended complaint and by finding that the amendment of the complaint would not relate back to the original filing date under Civ.R. 15(C). We agree.

*Standard of Review*

{¶17} We review a trial court's decision regarding a motion to amend a complaint under an abuse of discretion standard. *Patterson v. V & M Auto Body*,

63 Ohio St.3d 573, 576 (1992). A trial court will be found to have abused its discretion when its decision is contrary to law, unreasonable, not supported by the evidence, or grossly unsound. *State v. Boles*, 187 Ohio App.3d 345, 2010-Ohio-278, ¶ 16-18 (2d Dist.). When applying the abuse of discretion standard, a reviewing court may not simply substitute its judgment for that of the trial court. *Blakemore v. Blakemore*, 5 Ohio St.3d 217, 219 (1983).

*Civ.R. 3(A) & 15(C)*

{¶18} Civ.R. 3(A) explains how to commence a civil action and states:

A civil action is commenced by filing a complaint with the court, if service is obtained within one year from such filing upon a named defendant, *or upon an incorrectly named defendant whose name is later corrected pursuant to Civ.R. 15(C)*, or upon a defendant identified by a fictitious name whose name is later correct pursuant to Civ.R. 15(D).

(Emphasis added.) Thus, for an action to be considered "commenced," not only must a complaint be filed, but the plaintiff must serve the defendant with the complaint within one year from the date of the filing of the complaint. *Gibson v. Summers*, 11th Dist. Portage No. 2008-P-0032, 2008-Ohio-6995, ¶ 22. Further, the Supreme Court of Ohio has held that Civ.R. 3(A) must be read in pari materia with Civ.R. 15(C). *Cecil v. Cottrill*, 67 Ohio St.3d 367, 370 (1993), citing *Amerine v. Haughton Elevator Co.*, 42 Ohio St.3d 57 (1989).

{¶19} Civ.R. 15 concerns amended and supplemental pleadings. "Under Civ.R. 15(C), an amendment changing a party may relate back to the filing date of the original complaint for purposes of applying the statutes of limitations." *Mollette v. Portsmouth City Council*, 179 Ohio App.3d 455, 2008-Ohio-6342, ¶ 37 (4th Dist.). Specifically, Civ.R. 15(C) provides:

> Whenever the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, the amendment relates back to the date of the original pleading. An amendment changing the party against whom a claim is asserted relates back if the foregoing provision is satisfied and, within the period provided by law for commencing the action against him, the party to be brought in by amendment (1) has received such notice of the institution of the action that he will not be prejudiced in maintaining his defense on the merits, and (2) knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against him.

Thus, for an amendment to relate back to the original pleading, three requirements must be met. *Cecil* at 370. First, the amended complaint must arise from the same occurrence as the original complaint. *Id.* "Second, the party 'brought in' by the amendment must receive, 'within the period provided by law for commencing an action,' such notice of the action that the party is able to maintain a defense." *Id.*, quoting Civ.R. 15(C). Third, the new party must have known or should have known that but for the mistake concerning the proper party's identity, the action would have been brought against the new party. *Cecil* at 370. "Pursuant to *Cecil*,

* * * this must occur within the same period as provided in the second requirement, i.e., within one year after the filing of the complaint." *Sims v. Agosta*, 5th Dist. Fairfield No. 95-CA-0019, 1996 WL 72610, *3 (Jan. 29, 1996).

{¶20} "The plain language of [Civ.R. 15(C)] relates to the substitution of a proper party for one previously misidentified in the original complaint." *Coleman v. Featheringill*, 5th Dist. Richland No. 01CA094, 2002-Ohio-4664, ¶ 17, citing *Cecil*; *see also Knotts v. Solid Rock Enterprises, Inc.*, 2d Dist. Montgomery No. 21622, 2007-Ohio-1059, ¶ 31. "The concluding clause of Civ.R. 15(C) provides further support for this view inasmuch as it refers to a mistake regarding the identity of the proper party in the original pleading." *Coleman* at ¶ 17.

{¶21} The first issue we must decide in this appeal is whether naming Amy as the defendant was the type of mistake that was contemplated by Civ.R. 15(C). Thus, the resolution of this case partially turns on the definition of "mistake," which is not defined by the Civil Rules. "Mistake" is defined as "to fail to recognize or to identify wrongly." *Webster's New International Dictionary* 1446 (2002). We find that naming Amy instead of Katelyn as the driver of the car was a "mistake" pursuant to Civ.R. 15(C). *See Sims*, 1996 WL 72610, *4.

{¶22} We find that the mistake the Campbells made, concerning the identity of the proper party, is akin to the facts in *Gardner v. Molnar*, 5th Dist. Stark No. CA-8651, 1992 WL 61595. In *Gardner*, the plaintiffs mistakenly

named Robert Molnar, the owner of the vehicle, as the defendant even though he was not in the car at the time of the accident or involved in the accident in any way. *Id.* at *1. The plaintiffs sought to substitute Anthony Molnar, Robert's son, as Anthony was the driver of the vehicle. *Id.* The trial court found that the plaintiffs had made a mistake concerning the identity of the driver, and went on to analyze whether the three elements in Civ.R. 15(C) were met. *Id.* at *2.

{¶23} Similarly, in *Cecil*, the Court found that the mistake in that case was that the appellants merely called the appellee by a different name. 67 Ohio St.3d at 371. The Court found that there was no confusion as to the identity of the proper defendant to be sued. Of importance, the Court found that the insurance carrier who adjusted the claim was given notice of the suit. *Id.* at 372. Further, the Court found that the original complaint made clear the appellants never intended to sue the father, but intended to sue the driver. This was evident "by the fact that the body of the original complaint referred only to the driver of the vehicle." *Id.* Therefore, it was obvious " 'from the original complaint who the intended defendant was, and if [appellee] did not infer this from the summons and complaint, [he] should have done so.' " *Id.*, quoting *Hardesty v. Cabotage*, 1 Ohio St.3d 114, 117 (1982).

{¶24} The Court found that " '[s]uch a result comports with the purpose of the Civil Rules. "The spirit of the Civil Rules is the resolution of cases upon their

merits, not upon pleading deficiencies." ' " *Id.*, quoting *Hardesty* at 117, quoting *Peterson v. Teodosio*, 34 Ohio St.2d 161, 175 (1973). "Unless there is a showing of bad faith, undue delay, or undue prejudice to the opposing party, the rules allow for liberal amendment." *Roche v. On Time Delivery Servs., Inc.*, 8th Dist. Cuyahoga No. 94036, 2010-Ohio-2358, ¶ 37, citing *Turner v. Cent. Local School Dist.*, 85 Ohio St.3d 95, 99 (1999).

{¶25} Since we have found that the Campbells made a mistake in naming the proper defendant, we must now decide whether the amendment would relate back to the date of the original filing under Civ.R. 15(C) and 3(A). Amy argues that the Campbells' failure to serve Katelyn within one year of filing their original complaint is fatal to their appeal. Specifically, Amy argues that in *Cecil*, "the Ohio Supreme Court allowed the plaintiff to amend their complaint to correct an inadvertently misspelled name of the defendant because, although his name had been misspelled, the proper defendant was <u>actually</u> served with the complaint within the one (1) year time period set forth in Civ.R. 3(A)." (Emphasis sic.) (Appellee's Br., p. 10). We find that the appellee misrepresents the facts in *Cecil*.

{¶26} The Court in *Cecil* made no such statement that the correct defendant was served within one year after the original complaint was filed. *See generally Cecil; see also Reighard v. Cleveland Elect. Illuminating*, 7th Dist. Mahoning No. 05MA120, 2006-Ohio-2814, ¶ 18. Two days after filing the original complaint,

service was made only upon the misnamed defendant—the father. Although the father and son lived together and had the same name except for the middle initial, the court did not rely on proper service being made as the reason for its decision. Rather, the Court found that the son had *notice* for purposes of relation back. *Cecil*, 67 Ohio St.3d at 371 ("defendant sought to be sued was given timely *notice*"). The Court also noted that service on the son did not occur until *17 months after* the original complaint was filed. *Id.* at 367, fn. 1. *See also id.* at 373 (Wright J., dissenting) ("the plaintiff did not serve the correct defendant until more than seventeen months after the initial filing of the complaint").

{¶27} Like the plaintiff in *Cecil*, the Campbells named a party that had the capacity to be sued, i.e., Amy. The Campbells commenced the action by serving the complaint on Amy, even though she was not the real party in interest. Doing so commenced the action for purposes of Civ.R. 3(A). Thus, we must next determine whether the Campbells complied with Civ.R. 15(C) in order for their amended complaint to be deemed timely filed.

{¶28} First, we note that it is undisputed that the proposed amended complaint arose from the same occurrence as the original complaint, and thus, the first requirement is met. Next, we note that "Civ.R. 15(C) requires notice of the action—not personal service—within the time period provided [by] Civ.R. 3(A)." *Mollette* at ¶ 42; *see also Reighard* at ¶ 17 ("[Notice] to the intended defendant

-13-

must occur within one year of the filing of the original complaint if the SOL has run and that such notice does not require service").[2] While service can constitute notice, notice can exist without service. *Reighard* at ¶ 21.

{¶29} Here, both Amy and Katelyn testified that Katelyn learned of the complaint shortly after Amy was served with it. Katelyn testified that shortly after the accident, she learned that her mother was served with the complaint and was being sued by the Campbells. *See* Sept. 16, 2014 Hearing, p. 12. Amy similarly testified that she talked to Katelyn about the complaint around Christmas time, shortly after being served the complaint on December 19, 2012. *Id.* at p. 35-36. Amy also testified that she realized that the complaint mistakenly named herself as the driver, rather than Katelyn. Amy testified that she brought this fact to her insurance agent's attention. *Id.* at p. 31. Just as in *Cecil*, the mistake in this case is that the Campbells simply called Katelyn by a different name. Instead of the incorrect middle initial, they used the wrong first name. Further, the insurance carrier adjusting the claim was given notice of the suit. In addition, the complaint, by its very terms, reveals that the Campbells never intended to sue Amy, but in fact, intended to sue the driver, Katelyn. The body of the complaint repeatedly refers to the operator of the vehicle. Thus, just as in *Cecil*, it is evident from the

---

[2] We note that at least one court has stated that "[t]he amended complaint must be served upon the correct defendant within one year of the filing of the complaint." *Cross v. Biviano*, 11th Dist. Trumbull No. 2000-T-0123, 2001 WL 1217011, *3 (Oct. 12, 2001). We find that such a statement is in conflict with the Ohio Supreme Court's decision in *Cecil*, and thus, find the case unpersuasive.

original complaint who the intended defendant was, and if Amy and Katelyn " 'did not infer this from the summons and the complaint, [they] should have done so.' " *Cecil*, 67 Ohio St.3d at 372, quoting *Hardesty*, 1 Ohio St.3d at 117.[3]

{¶30} To avoid this result, Amy compares the case sub judice to the two cases of *Brady v. Bucyrus Police Dept.*, 194 Ohio App.3d 574, 2011-Ohio-2460 (3d Dist.), and *McAbee v. Merryman*, 7th Dist. Jefferson No. 13 JE 3, 2013-Ohio-5291. However, we find both cases distinguishable. This court's decision in *Brady* dealt with Civ.R. 15(D), not Civ.R. 15(C). In *McAbee*, the plaintiffs did not perfect service on anyone within the one-year period pronounced in Civ.R. 3(A). Thus, we find both cases to be unpersuasive and not controlling to the outcome in this case.

{¶31} In conclusion, we hold that the amendment to name Katelyn and dismiss Amy should have been freely granted under the facts and circumstances presented in this case. The amended complaint would have related back to the date of the original complaint and that the proper defendant received timely notice of the pending action.

---

[3] We also find it odd that Amy, a party whom the appellants agree should be dismissed from the action, continues to advance arguments to uphold the trial court's decision to deny the motion to amend. Since no one contests Amy's lack of liability in this case, she has no standing to oppose the motion to amend. Amy and Katelyn are covered under the same insurance policy, so they presumably have the same attorney. This further shows that Katelyn would not be prejudiced by the amended complaint, as her attorney has been involved in the litigation since its inception and has been advocating on her behalf the entire time.

**{¶32}** Accordingly, we sustain the Campbells' first and second assignments of error.

*Assignment of Error No. III*

**{¶33}** In their third assignment of error, the Campbells argue that the trial court erred by not allowing evidence regarding Amy's and Katelyn's legal representation. Due to the resolution of the Campbells' first and second assignments of error, this argument is moot and we elect not to address it. App.R. 12(A)(1)(c).

**{¶34}** Having found error prejudicial to the Campbells in their first and second assignments of error, we reverse the trial court's judgment and remand this matter for further proceedings consistent with this opinion.

*Judgment Reversed and*
*Cause Remanded*

**SHAW and PRESTON, J.J., concur.**

**/jlr**