**Fields**
v.
**Dailey**
*[Cite as 4 AOA 402]*

*Case No. 89AP-702*
*Franklin County, (10th)*
*Decided June 14, 1990*

*Mr. James D. McNamara, for Plaintiff.*

*Mr. Ronald J. O'Brien, City Attorney and Mr. David W. Insley, for Defendants.*

CASTLE, J.

Case number 89AP-702 presents an appeal by plaintiff from a judgment of the common pleas court which granted defendants' motion for a new trial on the issue of damages alone. The new trial was granted following a jury verdict in favor of plaintiff for the sum of $1,000,000 in compensatory damages for the wrongful death of plaintiff's son. Defendants appeal in case number 89AP-733 from the judgment rendered in favor of plaintiff on the issue of liability.

Robert Roddy, the oldest child of plaintiff, Betty Fields, was shot and killed on February 12, 1984 by defendant Michael Dailey, a sergeant with the Division of Police for defendant City of Columbus. The shooting occurred during the course of defendant Dailey's response to a call for help made by plaintiff. Apparently, Roddy had a long-term history of mental illness for which he took medication. When Roddy failed to properly medicate himself, however, he was prone to bizarre and uncontrollable behavior. During the course of Dailey's encounter with Roddy at plaintiff's residence, defendant Dailey shot Roddy six times with his service revolver. The first two shots struck Roddy in the upper portion of his legs. The second volley of four shots hit Roddy in the abdomen, which shots ultimately proved to be fatal.

As a result of this incident, plaintiff initiated the instant cause on February 12, 1986 for the wrongful death of her son. The prayer for relief sought $100,000 in compensatory damages. Plaintiff's subsequent motion to amend the prayer to request $750,000 was allowed on November 3, 1988 and the matter proceeded to trial on November 9, 1988. On the day of trial, plaintiff's motion *in limine* seeking to prohibit defendants from introducing evidence of Roddy's prior criminal history and evidence of Roddy's prior acts of violence were submitted to the common pleas court. The trial court granted plaintiff's motion to prohibit the introduction of Roddy's prior criminal history, but denied the motion with respect to Roddy's propensity toward violent behavior.

Following the presentation of all the evidence, the jury returned a verdict in favor of plaintiff on November 18, 1988 in the amount of $1,000,000. Defendants moved the court for a judgment notwithstanding the verdict which was overruled on March 16, 1989. Defendants' motion for a new trial respect to the issue of damages alone was granted on that same day and reduced to judgment on May 22, 1989. Plaintiff and both defendants now appeal and set forth the following respective assignments of error.

Case No. 89AP-702:

"1. The trial court erred as a matter of law, and abused its discretion, in granting the defendants' motion for new trial on the issue of damages, on the ground that the verdict was not sustained by the weight of the evidence.

"2. The trial court erred as a matter of law, and abused its discretion, in granting the defendants' motion for new trial on the issue of damages, on the ground that the verdict as to damages was influenced by improper passion and prejudice.

"3. The trial court erred as a matter of law, and abused its discretion, in granting the defendants' motion for new trial on the issue of damages, based in part upon the fact that the plaintiff's son suffered from mental illness, and improper evidence presented by the defendants in regard to that illness."

Case No. 89AP-733:

"1. After finding passion and prejudice influenced the jury, it was error for the court to deny a new trial on the issue of liability.

"2. It was error to infer to the jury that police officers have a duty to retreat from danger.

"3. The 'Columbus Police Department' is not an entity amenable to suit and it was error to not dismiss it as a party defendant.

"4. It was error to permit plaintiff to amend her complaint immediately prior to trial.

"5. It was error to deny the defendants the opportunity to use an expert witness.

"6. It was error for the trial court to fail to remedy improper argument made by plaintiff.

"7. It was error for the trial court to deny defendants a new trial after being apprised of misconduct by plaintiff's counsel."

## I. *New Trial Issues*

Under her first assignment of error, plaintiff argues that the trial court abused its discretion when it granted defendants' motion for a new trial on the issue of damages for the reason that the verdict was not sustained by the weight of the evidence. Plaintiff argues that she presented substantial evidence on the issue of damages so as to warrant the $1,000,000 verdict and a new trial would have been proper only if the verdict was manifestly unjust.

In a related vein, plaintiff argues under her second assignment of error that the trial court abused its discretion when it granted defendants' motion for a new trial on the ground that the verdict was influenced by improper passion and prejudice. Plaintiff contends that the amount of the verdict, although large, is not so dispropor-

tionate to plaintiff's feeling of loss over the death of her son so as to shock the senses. Plaintiff maintains that the trial court considered only the amount of the verdict and failed to examine other pertinent factors such as the jury's consideration of incompetent evidence, misconduct or other events which could reasonably be said to have swayed the jury.

Conversely, defendants argue under their first assignment of error that the trial court's finding that the jury's verdict was influenced by improper passion and prejudice mandates that defendants be granted a new trial on the issue of liability since the improper passion and prejudice permeated all aspects of the trial. Defendants argue that a jury's passion and prejudice cannot be severed so as to influence only the award of damages and not the issue of liability.

To further buttress this argument, defendants maintain under their sixth and seventh assignments of error that the jury's verdict on the issue of liability was influenced by misconduct on the part of plaintiff's counsel. Specifically, defendants argue that in closing argument plaintiff's counsel told the jury that defendants had failed to demonstrate that Roddy had ever harmed anyone in his entire life, an issue the trial court had previously foreclosed. Defendants also maintain that plaintiff's counsel improperly influenced the jury during a view of the scene by demonstrating that Dailey could have jumped over a front porch railing in order to retreat from the scene.

Generally, a trial court may grant a new trial as to any part or all issues raised in the trial. Civ. R. 59(A). A judgment granting a new trial pursuant to Civ. R. 59 and reflecting the exercise of discretion by the trial court will not be reversed absent an abuse of discretion. *Rohde* v. *Farmer* (1970), 23 Ohio St. 2d 82, paragraph one of the syllabus, and *Jenkins* v. *Krieger* (1981), 67 Ohio St. 2d 314, 320. Where the new trial is granted because the verdict is contrary to the weight of the evidence a reviewing court should assess the evidence favorably to the trial court's factual findings rendered in support of the Civ. R. 59(A)(6) determination. *Rohde, supra,* at 94; *Jenkins, supra,* at 320; and *Krejci* v. *Halak* (1986), 34 Ohio App. 3d 1, 3. A new trial granted because the verdict is so excessive as to be the result of passion or prejudice likewise rests in the exercise of discretion by the trial court. Cf. *Larrissey* v. *Norwalk Truck Lines, Inc.* (1951), 155 Ohio St. 207, 219-222; see, also, *Malik* v. *Central Ohio Disposal Co., Inc.* (Sept. 21, 1989), Franklin App. No. 88AP-1169, unreported (1989 Opinions 3486, 3491-3492).

Factors to be assessed in reviewing the exercise of discretion by the trial court under Civ. R. 59(A)(4) include the excessive nature of the verdict, consideration by the jury of incompetent evidence, improper argument by counsel, or other improper conduct which can be said to have influenced the jury. See *Fromson & Davis Co. v. Reider* (1934), 127 Ohio St. 564, paragraph three of the syllabus; *Larrissey, supra,* at 219; *Malik, supra; Mansfield Railway, Light & Power Co. v. Barr* (1914), 2 Ohio App. 367, 381-382.

With respect to defendants' motion under Civ. R. 59(A)(6), the trial court stated:

"The only element of damages before the jury other than a minor, *de minimus* claim for loss of services, was the mental anguish of decedent's mother. Even this element of damage was affected in a negative manner by evidence of the son's attitude or conduct toward Plaintiff as well as the son's frequent absences from the home. Additionally, there was a lack of evidence regarding a close relationship between Plaintiff's decedent and others in the family. Obviously, the Plaintiff has suffered a loss and an anguish that only a mother can experience. And it is clear that a jury in this case could establish some monetary value relating to mental anguish as an intangible element of damages. But considering the evidence relating to family relations and the lack of evidence indicating a substantial relationship between Plaintiff and her son, the verdict is not supported by the evidence."

Contrary to plaintiff's assertion, the trial court did not find that plaintiff lacked close relationship with Roddy, but rather, that the only element of damages was plaintiff's mental anguish. Viewing the record in favor of the trial court's determination, this court is unable to conclude that the trial court abused its discretion in finding that the evidence regarding this anguish did not support a verdict of $1,000,000. There is evidence that plaintiff was at times the object of Roddy's violent behavior. There is also evidence that plaintiff was afraid of her son during these episodes and sought to have him removed from the house. Moreover, plaintiff acknowledged that she was often unaware of her son's whereabouts during his frequent absences from her home. Construed in favor of the trial court's manifest weight determination, this evidence supports the decision to grant a new trial on the issue of damages.

This court also concludes that this evidence, in conjunction with counsel's closing argument urging the jury to return a large verdict which would send "a message to the Police Department," constitutes a proper basis for granting a new trial pursuant to Civ. R. 59(A)(4). While the trial court was not required to find the $1,000,000 verdict so excessive as to be the result of passion or prejudice, the trial court did not abuse its discretion in so finding under the circumstances. Based on the foregoing, plaintiff's first and second assignments of error are overruled.

On the other hand, the trial court's decision to grant a new trial as to the issue of damages alone is consistent with Civ. R. 59(A). Contrary to defendants' position, the evidence and conduct which supports the trial court's decision does not implicate the liability of defendants for Roddy's death. As pointed out above, these factors concern the size of the verdict only. An excessive verdict awarded by reason of passion or prejudice does not necessarily taint the verdict as to liability. *Cox v. Oliver Machinery Co.* (1987), 41 Ohio App. 3d 28, 34-35. See, also, *State Farm Fire & Cas. Co. v. Chrysler Corp.* (1988), 37 Ohio St. 3d 1; *Charles R. Combs Trucking, Inc. v. International Harvester Co.* (1984), 12 Ohio St. 3d 241; *Trauth v. Dunbar* (1983), 5 Ohio St. 3d 68; and *Mast v. Doctor's Hospital North* (1976), 46 Ohio st. 2d 539. Defendants' first assignment of error is overruled.

Defendants' sixth assignment of error is also not well-taken. This court agrees that it was improper for plaintiff's counsel to call the jury's attention to defendants' failure to present evidence that Roddy had ever harmed anyone since the trial court foreclosed defendants from presenting such evidence on plaintiff's motion. Such improper argument, however, does not mandate a new trial on the issue of liability. Rather, a reviewing court must assess both the prejudicial effect of the error and the probability that the impropriety affected the jury's verdict. See *Drake v. Caterpillar Tractor Co.* (1984), 15 Ohio St. 3d 346, 348-349.

Upon review of the context in which counsel for plaintiff made the statement, this court concludes that the potential for unwarranted prejudice was slight. The statement was offered in the context of counsel's review of defendants' evidence regarding Roddy's prior confrontations with the police. The evidence conflicted as to whether Roddy had acted violently in these instances. Counsel's statement, although improper, could have been viewed as merely an effort to denigrate this evidence, rather then as an attempt to place inadmissible evidence before the jury. Moreover, when viewed in the context of the remaining evidence, we are unable to say that, absent the

error, the verdict on liability would likely have been different.

Under their sixth assignment error, defendants assert that improper conduct by plaintiff's counsel during a jury view of plaintiff's residence constitutes plain error and requires a new trial on the issue of liability. The conduct at issue involves a demonstration by counsel that Dailey could have retreated from the residence by jumping over the front porch rail. Defendants argue that the full impact of this conduct was not realized until plaintiff's counsel suggested during closing argument that Dailey could have avoided the danger merely by stepping over the railing. Defendants did not object to either the conduct or the argument.

Generally, the doctrine of plain error is reserved for criminal trial, unless the error is so egregious as to cause a manifest miscarriage of justice. *Reichert* v. *Ingersoll* (1985), 18 Ohio St. 3d 220, 223. The doctrine is applied in civil suits only under exceptional circumstances. *LeFort* v. *Century 21 - Maitland Realty Co.* (1987), 32 Ohio St. 3d 121, 124.

Here, there is no indication in the record that counsel's misconduct, if any resulted in a manifest miscarriage of justice. Plaintiff's closing argument did not reference counsel's conduct, but rather, called the jury's attention to the fact that Dailey could have avoided the shooting by stepping over the railing. There was testimony from a defense witness, on both direct and cross-examination, that he stepped over the railing at the time of the shooting. The trial court instructed the jury that counsel's statement were not evidence. Accordingly, this court cannot find plain error under the circumstances. Defendants' sixth assignment of error is overruled.

As her final assignment of error, plaintiff maintains that the trial court erroneously relied upon unauthenticated and irrelevant evidence of Roddy's prior medical history in granting defendants' motion for a new trial. Since this evidence concerned the nature of plaintiff's relationship with her son, plaintiff argues that the error was prejudicial.

Generally, all relevant evidence is admissible, unless the potential for prejudice outweighs its probative value. Evid. R. 402 and 403. The admission or exclusion of relevant evidence rests largely within the exercise of discretion by the trial court. *O'Brien* v. *Angley* (1980), 63 Ohio St. 2d 159, 163. Relevance, in the context of cross-examination, includes not on all facts in issue but also, a witness's credibility. Evid. R. 311(B). See, generally, McCormick on Evidence (3rd Ed. 1984) 63, Section 29. When credibility is tested by way of prior inconsistent statements, the only requirement is that the examiner have a good-faith belief that the statements were made by the witness. See, *e.g.*, *State* v. *Gillard* (1988), 40 Ohio St. 3d 226, paragraph two of the syllabus, certiorari denied (1989), 106 L. Ed. 2d 608. Tangible evidence of prior statements, to be admissible, must meet the requirements otherwise imposed by the Rules of Evidence. See, *e.g.*, Evid. R. 613, 801 and 901.

Here, the scope of defendants' cross-examination of plaintiff regarding the nature of her relationship with Roddy was proper. Plaintiff's statements, made at various stages of her son's life, were relevant to his psychiatric condition and bore directly on the credibility of plaintiff's testimony about her relationship with him. There is no indication in the record that defendants lacked a good-faith basis for the questioning; in fact, all of the statements attributed to plaintiff were either admitted by plaintiff as hers or supported by the testimony of defense witnesses. There was no error with respect to these statements. Plaintiff's third assignment of error is overruled.

## II. *Self Defense*

Defendants argue, under their second assignment of error, that the trial court erroneously instructed the jury on the issue of self-defense with respect to the duty of a police officer to retreat. It is defendant's position that a police officer, in the course of his duties, has no obligation to retreat from danger, but is required to confront the danger.

The elements of self-defense in Ohio are:

"* * * (1) the slayer was not at fault in creating the situation giving rise to the affray; (2) the slayer has a bona fide belief that he was in imminent danger of death or great bodily harm and that his only means of escape from such danger was in the use of such force; and (3) the slayer must not have violated any duty to retreat or avoid the danger. (*State* v. *Melchior*, 56 Ohio St. 2d 15, approved and followed.)" *State* v. *Robbins* (1979), 58 Ohio St. 2d 74, paragraph two of the syllabus.

There is no duty to retreat, however, from an assault in one's home. *State* v. *Williford* (1990), 49 Ohio St. 3d 247, paragraph two of the syllabus. Likewise, a person assaulted while in his place of business has no duty to retreat. *Graham* v. *State* (1918), 98 Ohio St. 77, 79. However, these exceptions to the duty to retreat have been narrowly construed to those circumstances where the assault occurs in one's home or in one's business. *State* v. *Jackson* (1986), 22 Ohio St. 3d 281, 283-

284, certiorari denied (1987), 480 U.S. 917. Merely because an assault occurs in a place where one has a right to be, whether as an invitee or licensee, does not obviate the duty to retreat. *Id.*

Self-defense, of course, is available to a police officer in defending a civil suit for wrongful death.See, *e.g. Stevens,* v. *Atzberger* (App. 1934), 18 Ohio Law Abs. 133. When effecting a lawful arrest, a police officer is under no obligation to retreat. See *State* v. *Yingling* (App. 1942), 36 Ohio Law Abs. 436; *Skinner* v. *Brooks* (1944), 74 Ohio App. 288. See, also, 5 American Jurisprudence 2d (1962) 771, Arrest, Section 83, and 1 Restatement of the Law 2d, Torts (1965) 109, Section 65(2)(C). Rather, the officer is required to make arrests. See R.C. 737.11 and 2935.03. See, also, R.C. 2917.05.

In this case, however, defendants did not premise their self-defense justification upon defendant Dailey's performance of his duties as an officer. There is no evidence that Roddy was being arrested. Rather, defendant Dailey testified on cross-examination as follows:

"Q. And at that moment, you fired four more times, and your position in this lawsuit was that it was necessary for you to fire those additional four times in order to protect your own life, correct?

"A. Yes, sir.

"Q. No other choice?

"A. Not that I saw.

"Q. Because if it wasn't necessary to shoot in order to protect your life, it wouldn't be self-defense, would it?

"A. It could be defense of a third person, but I was not particularly thinking about that, sir. I was trying to protect myself.

"Q. And you also claim not just that the shooting was self-defense, but that the amount of force that you used, four more times, was necessary and appropriate under the circumstances?

"A. Yes, sir, because it never took him off his feet the first two rounds. He came back at me.

"Q. Why couldn't you try, after you shot him twice and he's still in the living room and you even said took a half step back, why couldn't you try stepping over the railing out into the yard?

"A. Carl Evans was behind me, sir. That was an instantaneous type of thing. I don't recall counting seconds between the first volley and the second volley. I said it was a hesitation --

"Q. Well, at one point --

"A. -- of however long.

"Q. I'm sorry.

"At one point, you testified that it seemed like an eternity. You did say that under oath, didn't you? Do you want to see it?

"A. Yes, I understand that I said that under oath. I guess what I'm trying to say is that time does slow down. If you're asking me to keep track of time in that intense of a situation where I'm faced with death myself and having to make probably one of the most difficult decisions a police officer is ever asked to make, yeah, it seemed like an eternity. It was a very, very difficult thing to pull that trigger.

"Q. But during the period that seemed like an eternity, you didn't step backward over the fence because you didn't have time, and Sgt. Evans was in your way? Is that your testimony?

"A. Yes, sir.

"Q. And why, during that period, if you were only supposed to shoot as a last resort and you've shot him twice, why didn't you move down the porch to the right, get out of his line, just get out of there?

"A. I don't know, sir. I was not thinking of escape. I was thinking of protecting myself. In the instantaneousness of the situation, I didn't stop and say, 'I want to analyze the situation.' I am trying to react to a certain position, and that's what I was doing myself.

"Q. And why, Officer, after you stood there after you shot him twice, couldn't you have just let go of the storm door and let it shut? That would have somewhat increased you safety?

"A. I don't know, sir, because I did not think of it.

"Q. These ideas never occurred to you as you stood there on the porch, did they?

"Q. No, sir, they did not." (Tr. 696-698.)

In light of this testimony, it is apparent that defendant Dailey was acting purely in defense of himself and not in pursuit of his official duties. Under such circumstances, the self-defense instruction given was correct. The trial court did not instruct the jury that the police were required to retreat even if performing their duty. Rather, the trial court charged the jury that a police officer is entitled to use deadly force when necessary, provided the amount of force used is necessary to accomplish his purpose. Defendants did not request any additional charge regarding the circumstances under which a police officer is justified in using deadly force. Defendants objected solely to the inclusion of the "duty to retreat" rule in the self-defense instruction. However, the evidence adduced did not support an exception to the general rule of self-defense and the trial court properly

instructed the jury in this case. Defendant's second assignment of error is overruled.

### III. *Miscellaneous*

Under the third assignment of error, defendants argue that the trial court erroneously failed to dismiss the Columbus Police Department as a defendant since there is no such entity as the Columbus Police Department, it being the Columbus Division of Police, and because the police department, even if properly identified, is not capable of being sued.

This assignment of error is not well-taken and is overruled. Defendants failed to raise this issue until the close of plaintiff's case via a Civ. R. 50(A) motion for a directed verdict. Both before and during trial, the parties agreed that Dailey was acting within the scope of his employment with the Columbus Police Department for purposes of liability. At all times, the proper defendant--the City of Columbus--was adequately represented by the city attorney. As such, any deficiency in plaintiff's complaint was purely technical and did not prejudice defendants. See Civ. R. 15(C).

Moreover, had defendants raised the fact that the correct name of the police department--"City of Columbus, Department of Public Safety, Division of Police"--the matter could have been promptly corrected pursuant to Civ. R. 15(A). To the extent defendants claim the police department lacks the legal capacity to be sued, such matter must be raised in the answer by specific negative averment. Civ. R. 9(A). Defendants' failure to aver the lack of legal capacity of the police department supports the decision of the trial court to deny defendants' Civ. R. 50(A) motion.

Defendants next contend under the fourth assignment of error that the trial court erroneously allowed plaintiff to amend her complaint two days before trial commenced. Since plaintiff failed to accomplish the amendment within the seven-day period provided by Civ. R. 54(C), defendants argue that plaintiff was entitled to demand only $100,000 at trial and such error constitutes plain error.

Since the trial court ultimately upheld defendant's motion for a new trial on the issue of damages, the error committed in allowing plaintiff to amend her prayer for relief within the seven-day period provided by Civ. R. 54(C) was corrected. Under the facts of this case, the erroneous amendment does not amount to plain error. The fourth assignment of error is overruled.

Finally, under the fifth assignment of error, defendants maintain that the trial court abuse its discretion when it excluded defendant's expert witness as a sanction for violating Civ. R. 26. Since plaintiff requested a list of defendants' expert witnesses only eight weeks before trial, which defendants timely answered, defendants contend that there is no basis for concluding that they violated Civ. R. 26(E)(1)(b). When defendants ultimately decided to engage an expert witness, it is defendants' position that plaintiff was timely notified and cannot demonstrate any prejudice arising from defendants' failure to provide the expert's name following plaintiff's initial request.

Trial courts exercise discretionary powers over discovery procedures. *State, ex rel. Daggett, v. Gessaman* (1973), 34 Ohio St. 2d 55, 57. See, also, *Stegawski v. Cleveland Anesthesia Group, Inc.* (1987), 37 Ohio App. 3d 78, 85, and *Fairfield Commons Condominium Assn. v. Stasa* (1985), 30 Ohio App. 3d 11, 15, certiorari denied (1987), 479 U.S. 1055. Pursuant to Civ. R. 37, a trial court acts within its discretion when it excludes the testimony of an expert witness who was not timely identified pursuant to Civ. R. 26(E)(1)(b). Jones v. *Murphy* (1984), 12 Ohio St. 3d 84, syllabus. The sanction of exclusion is available for both willful and inadvertent noncompliance with Civ. R. 26(E). *Huffman* v. *Hair Surgeon Inc.,* (1985), 19 Ohio St. 3d 83, 85. Cf. *Shumaker* v. *Oliver B. Cannon & Sons, Inc.* (1986), 28 Ohio St. 3d 367, 370-371. Since the purpose of a liberal discovery policy is to encourage the free flow of information between parties and to avoid surprise at trial, the choice of a sanction for discovery abuses should be tailored to accomplish this purpose. See *e.g., Nickey* v. *Brown* (1982), 7 Ohio App. 3d 32, 34. See, also, *Jackson* v. *Booth Memorial Hosp.* (1988), 47 Ohio App. 3d 176, 178-180, and *Price* v. *Cleveland Clinic Found.* (1986), 33 Ohio App. 3d 301, 305-306.

In this case, plaintiff submitted her interrogatories to defendants approximately two months prior to the scheduled trial date of November 9, 1988. Defendants filed the completed interrogatories approximately one month before trial. In response to plaintiff's request that defendants identify any expert witnesses they intended to use at trial, defendants responded: "Expert undetermined. Will advise." Subsequently, on October 26, defendants supplemented their response to plaintiff's request by filing the name of an expert witness they intended to call at trial. Two days before trial, the common pleas court prohibited defendants from using this expert at trial because of defendants' failure to timely notify plaintiff. At trial, defendants did not attempt to call the witness nor did they proffer the testimony of such witness.

Under the facts in the record before this court, we are unable to conclude that the trial court abused its discretion by its *in limine* order excluding defendants' expert testimony. Defendants' justification for the delay in deciding whether to use an expert and in identifying that witness was simply that they were undecided as to the need for such testimony. However, the two and one-half years this matter was pending before trial constitutes a reasonable basis for the trial court's conclusion that defendants' supplemental response was untimely. Additionally, there is no indication in the record that plaintiff could have completed her discovery of this witness without significant hardship. Finally, there is no indication in the record that a continuance was practical, especially in light of the large number of witnesses that were scheduled to appear. In light of these factors, no abuse of discretion is present. Cf. *Price, supra.* Accordingly, defendants' fifth assignment of error is overruled.

Having overruled all assignments of error, the judgment of the court of common pleas is affirmed. This cause is remanded to the trial court for a new trial on the issue of damages alone.

*Judgment affirmed and*
*cause remanded.*

STRAUSBAUGH and WHITESIDE, JJ., concur.

CASTLE, J., retired of the Twelfth Appellate District, assigned to active duty under authority of Section 6(C), Article IV, Ohio Constitution.