[Cite as *Southworth v. N. Trust Securities, Inc.*, 2013-Ohio-2917.]

# Court of Appeals of Ohio

### EIGHTH APPELLATE DISTRICT
### COUNTY OF CUYAHOGA

JOURNAL ENTRY AND OPINION
No.  99250

# JOHN D. SOUTHWORTH

PLAINTIFF-APPELLANT

vs.

# NORTHERN TRUST SECURITIES, INC., ET AL.

DEFENDANTS-APPELLEES

## JUDGMENT:
AFFIRMED

Civil Appeal from the
Cuyahoga County Court of Common Pleas
Case No. CV-688175

**BEFORE:**  Boyle, P.J., Celebrezze, J., and Jones, J.

**RELEASED AND JOURNALIZED:**  July 3, 2013

**ATTORNEYS FOR APPELLANT**

Daniel M. Connell
Shannon J. Polk
Haber Polk Kabat, L.L.P.
737 Bolivar Road
Suite 4400
Cleveland, Ohio    44115


**ATTORNEYS FOR APPELLEES**

Patrick O. Peters
Jeremy Gilman
Peter N. Kirsanow
Benesch, Friedlander, Coplan, Aronoff, L.L.P.
200 Public Square
Suite 2300
Cleveland, Ohio    44114

MARY J. BOYLE, P.J.:

{¶1} Plaintiff-appellant, John Southworth, appeals from a judgment denying his motion for a new trial after a jury found in favor of defendants-appellees, Northern Trust Securities, Inc. ("Northern Trust"), Michael Cogan, and Scott Dille (collectively "defendants"), on his age discrimination claim. He raises four assignments of error for our review:

> 1. The trial court erred in admitting evidence relating to defendants' after-acquired evidence defense. Having done so, the trial court further erred by failing to provide a curative instruction to the jury to guide it regarding the proper consideration of such evidence.
>
> 2. The trial court erred by entering judgment in favor of defendants Mike Cogan and Scott Dille despite the jury's failure to return a verdict in their favor.
>
> 3. The trial court erred by limiting plaintiff's cross-examination of defendant Mike Cogan during defendant's case-in-chief.
>
> 4. The trial court erred by denying plaintiff's motion for a new trial based upon the foregoing irregularities and errors of law during the trial.

{¶2} After review, we find no error on the part of the trial court and affirm.

Procedural History and Factual Background

{¶3} In late 2008, after the global economic downturn, Northern Trust announced that it would reduce its workforce beginning in early 2009. As part of Northern Trust's reduction in force ("RIF"), it eliminated 450 employees worldwide — 188 employees in the United States and three in the Cleveland office. Southworth, a portfolio manager, was one of the three employees eliminated in Northern Trust's

Cleveland office.   He was 63 years old at the time.

{¶4}   Mike Cogan, president and chief executive officer of Northern Trust's Cleveland office, notified Southworth on February 25, 2009, that he had been selected to be eliminated as part of the RIF.   Cogan, who was Southworth's direct supervisor, informed Southworth that his last day of employment would be April 25, 2009.   Cogan further told Southworth that during the "60-day notification period," Northern Trust expected Southworth to continue working to "transition and/or complete assignments."

{¶5}   Southworth, however, filed an age discrimination complaint against Northern Trust and Cogan in mid-March 2009.   Southworth later amended his complaint to add Scott Dille, Cogan's supervisor and senior vice president of Northern Trust's midwest region.   After Southworth filed his complaint, he was no longer permitted to work at Northern Trust.   But Northern Trust continued to pay Southworth his full salary and benefits until April 25, 2009.

{¶6}   The case was tried to a jury in April 2012.   The jury returned a verdict for defendants.   Southworth moved for a new trial, which the trial court denied.   It is from this judgment that Southworth appeals.

I.

{¶7}   In his first assignment of error, Southworth argues that the trial court erred when it permitted defendants to cross-examine him regarding Ex. MMMMMM, and when it allowed Ex. MMMMMM to be admitted into evidence through his

cross-examination. Southworth claims that Ex. MMMMMM was "after-acquired evidence," which he asserts was not applicable in this case.

{¶8} Ex. MMMMMM was a list that Southworth created of his Northern Trust clients after he was notified that his position was being eliminated. The list contained the client's name, the number of accounts the client had with Northern Trust, the client's total account value at Northern Trust, Southworth's estimated probability that the client would follow him to another company, and comments that Southworth had made regarding each client.

{¶9} After Southworth was told that his position was being eliminated, he immediately began to look for other employment. He found employment "fairly quickly" at Glenmede Trust Company. He stated,

> I went to work at [Glenmede] somewhere around May 11th, I think. Whatever would be close to a Monday. My last day at Northern Trust Company was April 25th. And so I considered myself to be an employee and loyal to Northern Trust through the 25th of April. Although I was meanwhile seeking employment, I viewed myself as an employee through the last day.

{¶10} On cross-examination, Southworth admitted that he gave a copy of his client list, Ex. MMMMMM, to Frank Harding, managing director at Glenmede. Southworth testified that he had lunch with Harding in mid-March of 2009, but said that he did not give the list to Harding until after April 25, 2009. Southworth acknowledged that in Harding's deposition, taken by defendants just before trial, Harding stated that he believed Southworth had given him the client list "either just before — I think just before [Southworth] retired" from Northern Trust.

{¶11} Southworth agreed that in the financial industry, there are "strict confidentiality requirements." He further agreed that by violating a client's confidentiality, it was "not just a minor offense," but "it [was] a cardinal offense." He also agreed that Northern Trust could face "potential liability" if the client discovered that his or her personal information was disclosed in some way, either intentionally or inadvertently.

{¶12} Southworth moved to strike defendants' cross-examination of him regarding defendants' "after-acquired evidence defense," claiming that it was not relevant because he did not give the client list to Harding until after he was terminated. Southworth argued that any evidence of his conduct that postdates his selection in the RIF should have been stricken.

{¶13} In *McKennon v. Nashville Banner Publishing Co.*, 513 U.S. 352, 115 S.Ct. 879, 130 L.Ed.2d 852 (1995), the United States Supreme Court established the "after-acquired evidence" defense, which allows a defendant employer to show that an employee would have been terminated anyway had the employer known of wrongful conduct by the employee plaintiff. *Id.* at 362. If the defense applies, it generally bars the employee from obtaining front pay and reinstatement, and limits back pay. *See Thurman v. Yellow Freight Sys., Inc.*, 90 F.3d 1160, 1168 (6th Cir.1996). The Sixth Circuit Court of Appeals has also held that an employer is not entitled to a "*McKennon* instruction limiting damages" where the employee's alleged misconduct arose as a direct result of the discriminatory act. *Jones v. Nissan N. Am., Inc.*, 438 Fed.Appx. 388, 407

(6th Cir.2011).

{¶14} In denying Southworth's motion to strike, the trial court stated:

> Respectfully, I disagree. I think that cross-examination is cross-examination. And I'm going to note that during the course of your examination of Mr. Southworth that you certainly were able to elicit that he was for all intents and purposes a good employee, and I think that we were in that area quite a bit as it related to his book of business and the client relationships that he had, and I think I actually noted in my notes that you indicated or that he indicated several times that he was good at his job and did a good job. So I think it's pretty fair game to cross him on things that might not have been good, and that all of that encompasses part of what this RIF was about from the Court's perspective[.]

{¶15} Evid.R. 611(B) sets forth the "scope of cross-examination." It provides that "[c]ross-examination shall be permitted on all relevant matters and matters affecting credibility."

{¶16} "Relevance, in the context of cross-examination, includes not only all facts in issue but also a witness's credibility." *Fields v. Dailey*, 68 Ohio App.3d 33, 42, 587 N.E.2d 400 (10th Dist.1990), citing Evid.R. 611(B); McCormick, *Evidence*, Section 29, at 63 (3d Ed.1984).

{¶17} The scope of cross-examination lies within the sound discretion of the trial court. *Renfro v. Black*, 52 Ohio St.3d 27, 33, 556 N.E.2d 150 (1990). The standard of review on such evidentiary rulings is whether the trial court abused its discretion. *Id.* An abuse of discretion is shown when a decision is unreasonable, that is, when there is no sound reasoning process that would support the decision. *AAA Ents. v. River Place Community*, 50 Ohio St.3d 157, 161, 553 N.E.2d 597 (1990).

{¶18} Southworth spends much of his brief arguing that the trial court erred when

it permitted defendants to question him about the client list because he asserts that he only shared his client list with Glenmede as a result of the alleged adverse employment action taken against him — thus, after Northern Trust discriminated against him. He argues that under *Jones*, the trial court should have stricken all evidence related to the client list because it was "after-acquired evidence."

{¶19} But Southworth's entire argument regarding after-acquired evidence is misplaced. In *Jones*, the Sixth Circuit found that the district court erred when it gave the "*McKennon* instruction limiting damages" to the jury. *Jones*, 438 Fed.Appx. at 407. *Jones* does not stand for the proposition that Nissan could not question the plaintiff-employee about his alleged misconduct. Indeed, the plaintiff-employee testified as to his alleged misconduct (that he sought new employment while on medical leave without Nissan's approval, which was against Nissan's employment policies) and explained his reason for doing so to the jury (he needed to support his family and he knew Nissan would say no if he asked them). The *Jones* court reversed for a new trial on damages without the *McKennon* instruction. *Id.*

{¶20} Here, the trial court permitted defendants to question Southworth about the client list to counter his testimony on direct-examination that he was loyal to Northern Trust until April 25, 2009. If Southworth gave the client list to Harding prior to that date, sharing Northern Trust's confidential client information, then the jury could have considered that information to decide that he was not loyal to Northern Trust until April 25, 2009 — as he testified he was. Southworth opened the door to this testimony. This

matter directly reflected on his credibility.   Thus, it was entirely appropriate for the trial court to permit defendants to cross-examine Southworth on the client list and admit the client list into evidence.

{¶21} Southworth further argues that the trial court erred when it denied his request for a curative instruction to the jury "to guide it regarding the proper consideration" of the "after-acquired evidence."   We disagree.

{¶22} During defendants' cross-examination of Southworth, they filed a motion requesting the court to instruct the jury on "the after-acquired evidence doctrine." When discussing proposed jury instructions at the end of trial, the trial court addressed defendants' motion.   The trial court indicated that it would not instruct the jury on the after-acquired evidence doctrine as requested by defendants.   Southworth then asked the court to give the jury a curative instruction, explaining to the jury that evidence related to the "after-acquired evidence, meaning his alleged violation of Northern Trust's policy, [could not] be considered for purposes of liability and really should not be considered for purposes at all[.]"   The trial court responded:

> I think there was evidence, as I indicated previously, that that list may have been disclosed while Mr. Southworth was working for Northern Trust or may not.[1]   And I think that the jury would be able to use their collective memories to determine whose credibility they believed in this particular case, and therefore I am not going to give any additional instructions as it relates to that after-acquired evidence.

---

[1]Contrary to his deposition testimony, Harding testified (after Southworth) that he thought that Southworth had given him the client list sometime in April 2009, but Harding stated that he believed it was after Northern Trust fired Southworth.   When asked if Southworth could have given Harding the list in mid-March, Harding replied that Southworth "might have."

{¶23} Southworth maintains that the jury should have been given a "curative instruction" because it "would have informed the jury that evidence regarding [his] use of Ex. MMMMMM could not even be considered until *after* [it] had reached a finding on liability." (Emphasis sic.) Southworth's argument is unpersuasive. The trial court properly instructed the jury on determining defendants' liability or lack thereof. The jury could *and should* consider all matters of credibility for all witnesses *before* it determined liability. This is an essential part of the adversary process. Thus, if the trial court had given the jury the curative instruction as requested by Southworth, it would have erred in doing so. As the trial court properly indicated, the jury was capable of determining the credibility of the witnesses and the weight to be given to a witness's testimony.

{¶24} Southworth's first assignment of error is overruled.

II.

{¶25} In his second assignment of error, Southworth argues that the trial court erred when it entered judgment in favor of Cogan and Dille, despite the fact that the jury failed to return a verdict in their favor.

*Jury Instructions*

{¶26} The trial court instructed the jury that Southworth brought the action against "the corporate defendants and Michael Cogan and Scott Dille in their individual capacity as supervisors or managers under Ohio law." It further explained:

> Under Ohio law, the term employer includes supervisors and

managers acting in the interest of the employer.

Since individual liability under Ohio law extends only to an individual's own actions, liability is limited to individuals who played a role in making an employment decision. Consequently, in order to establish that Mr. Cogan and/or Mr. Dille are personally liable, Mr. Southworth has to show that not only that they were vested with the power to make decisions affecting him, but also that Mr. Cogan and/or Mr. Dille used that authority with a discriminatory motive.

Thus, it is not enough that defendants Cogan and Dille are officers or managers of the defendant corporations. Rather, you must find the defendants Cogan and/or Dille played a role in the decision to terminate the plaintiff and was or were motivated by his age.

{¶27} The trial court then explained the verdict forms to the jury. It stated:

I'm going to go through these verdict forms with you, and I'm going to just give you an explanation here. These, ladies and gentlemen, are entitled jury interrogatory number 1. The word interrogatory is a fancy lawyer word for the word question basically. Okay.

So this is a question that you have to answer: Do you find by the greater weight of the evidence that Northern Trust, FSB or Northern Trust Corporation, Northern Trust Company, Northern Trust Bank are a single employer as defined in Court's instructions, and then you would check either yes or no and then the foreperson signs the first spot, and each of you would continue to sign through.

Now, then there [are] instructions that go to the bottom of this, all right. And they say if the answer of the foregoing is yes then you complete the verdict forms for single employer, okay? Now, you'll see at the top of the verdict forms it says this would be a verdict for the plaintiff, single employer. Okay. So it will actually tell you which one you need to look at, and then it will say: We the jury in this case being duly impaneled and sworn, upon the concurrence of the undersigned jurors being not less than three fourths of the whole number thereof, do find for the plaintiff, and then that would explain the type of damage, economic compensatory damages and non-economic compensatory damages, and then there is an amount. Then you would check off: The above compensatory damages are awarded against the following defendants, and you would check each box, okay. Then you would sign off.

Now if you find in favor of the defendants in the single employer document, you would therefore fill out the other verdict form, okay, so you are not going to fill out each one of these. It's going to be sort of an either or proposition, but it will say this is the single employer, you can see it: We the Jury in this case being duly impaneled and sworn, upon the concurrence of the undersigned jurors, being not less than three fourths of the whole number thereof do find for the defendants. And that would include Northern Trust, Northern Trust Corporation, Company, Bank, and against John Southworth for the plaintiff's claim of age discrimination. And then you would sign off with the foreperson, signing the front spot there.

*Verdict and Verdict Forms*

**{¶28}** When the jury returned after deliberations, the court stated, "I understand you have reached a verdict, is that correct? Mr. Foreman, if you would hand the forms to the plaintiff, please." The bailiff said, "Make sure they're upside down, please. Thank you." The court then stated, "Okay. Ladies and gentlemen, the answer to jury interrogatory number one is that, yes, Northern Trust is a single corporation, but this is a verdict in this case for defendants. Okay. Ladies and gentlemen, is that your verdict?" At that point, the transcript states, "Jurors: (Indicating.)" The trial court then polled each juror individually, asking them "is this your verdict?" Each juror replied, "yes."[2] After the polling, the trial court told the jurors that it wanted to speak with them for a few minutes. After the jury exited the courtroom, the judge asked the attorneys, "Do you want to look over the verdict forms?" Southworth's attorney responded, "sure."

---

[2]The verdict form for defendants is only signed by seven jurors (even though all eight answered "yes"), but this is still a verdict encompassing three-fourths of the jury.

**{¶29}** Review of the interrogatories shows that the jurors answered interrogatory number 1, "yes," finding that the various entities of Northern Trust were a single employer. The jurors then filled out a verdict form for "single employer" titled, "Verdict for defendant Northern Trust, FSB, Northern Trust Corporation, Northern Trust Company, Northern Trust Bank, N.A., and Northern Trust Securities, Inc." The verdict form states,

> We, the jury in this case, being duly impaneled and sworn, upon the concurrence of the undersigned jurors, being not less than three-fourths of the whole number thereof, do find for Defendant NORTHERN TRUST, FSB, NORTHERN TRUST CORPORATION, NORTHERN TRUST COMPANY, AND NORTHERN TRUST BANK, N.A., and against plaintiff John D. Southworth on plaintiff's claim for age discrimination.

**{¶30}** The jurors left the remaining forms blank, including the forms titled: "Verdict for defendant Michael Cogan"; "Verdict for defendant Scott Dille"; and "Verdict for the plaintiff." The verdict form for the plaintiff states, "We the jury in this case, being duly impaneled and sworn, upon the concurrence of the undersigned jurors, being not less than three-fourths of the whole number thereof, do find for Plaintiff John D. Southworth and award the following damages[.]" The form then lists "Type of Damages" as "Economic Compensatory Damages (back pay, front pay, lost benefits, etc.)" and "Non-Economic Compensatory Damages (pain and suffering, reputational damages, etc.)," and has blank lines next to each one. Below that, the form states, "The above Compensatory Damages are awarded against the following Defendants (check each defendant liable for age discrimination)[,]" and then lists Northern Trust, Michael Cogan, and Scott Dille separately, with blank lines next to each one.

*Failure to Object*

**{¶31}** Initially, we note that Southworth did not object to the verdict form at trial. He argues that he could not have timely raised an objection because the trial court discharged the jury before he had an opportunity to look at the verdict forms. He cites to *Gugliotta v. Morano*, 161 Ohio App.3d 152, 2005-Ohio-2570, 829 N.E.2d 757 (9th Dist.), in support of his argument that once the jury left the courtroom, went back to the jury room, and spoke with the trial court "presumably regarding matters related to the case," the jury could not have further deliberated. While we agree that *Gugliotta* stands for the "well- established" proposition that "once a jury has returned its verdict and been discharged, it cannot be reconvened to alter or amend its verdict," that is the extent of its relevance to the facts in this case.

*Gugliotta v. Morano*

**{¶32}** In *Gugliotta*, the jury had deliberated several days *without a verdict*. The trial court sent the following question into the jury room: "Is there a possibility that after an additional period of time, today or tomorrow, you may reach a verdict on any count?" *Id.* at ¶ 14. The jury foreperson answered "no." *Id.* The trial court then brought the jury back into the courtroom and asked each juror the same question, which they answered the same way. After polling the jury, the trial court discharged the jury after it determined that the jury could not reach a verdict in one or two more days of deliberation.

**{¶33}** The judge then went to the jury room to speak with the jurors without

counsel or the court reporter present. After speaking to the jurors, the trial court explained on the record that the jurors informed her that they could reach a verdict if they could deliberate "beyond the time period" that she had given them (i.e., beyond one or two more days). *Id.* at ¶ 17. The trial court then polled each juror on the record, asking them if they could reach a verdict "today, tomorrow, or beyond tomorrow," with each juror responding "yes." *Id.* at ¶ 19. The trial court then instructed the jury to continue its deliberations.

{¶34} The plaintiff objected to permitting the jury to continue deliberations, arguing that it was an error to permit the jury to continue deliberations after it had been discharged and that the jury was tainted by the trial court's off-the-record contact with them. *Id.* The trial court called each juror individually into the courtroom and asked what the juror recalled about the judge's contact with them and whether "anything the judge said in the jury room outside the presence of counsel or the court reporter had prejudiced that particular jurors' ability to deliberate or form an opinion of the case." *Id.* One juror reported that the trial judge had asked what the jurors "thought of the case" and that the judge "said the jury was dismissed and then the jurors began asking questions and the judge answered the jurors' questions." *Id.* at ¶ 21. A second juror began crying on the witness stand and indicated that the emotional state of the jury changed after the judge told them they were dismissed. *Id.*

{¶35} The trial judge ultimately determined, however, that her ex parte communications with the jury had not prejudiced the jury, and the jury was permitted to

continue its deliberations.  *Id.* at ¶ 22.    The jury ultimately reached a verdict in favor of the defendant and the plaintiff appealed.   Relying on "well established [law] in Ohio that once a jury has returned its verdict and has been discharged, it cannot be reconvened to alter or amend its verdict," the Ninth District determined that the trial judge abused her discretion in permitting the jury to continue deliberations because the "jury in the instant matter was discharged in open court and without reaching a verdict."   *Id.* at ¶ 27.

*Analysis*

{¶36} The facts in this case are distinguishable from those in *Gugliotta*.   Here, the jury had reached a verdict in the case.   In open court, the trial court stated, "I understand you have reached a verdict[,]" and then told the foreman to "hand the verdict forms to the plaintiff."   Further, it appears from the transcript that the foreman did, in fact, hand the verdict forms to the plaintiff before the trial court read the verdict in open court because the bailiff states, "make sure they're upside down, please.   Thank you." The trial court then determined that the jury found that Northern Trust was a single corporation and stated, "this is a verdict in this case for defendants."   The trial court polled each juror, asking "is this your verdict."   All eight jurors responded "yes." Once the trial court had polled each juror, it stated, "Very good.   Thank you, ladies and gentlemen.   I would like to speak with you, if I could, just for a few minutes."   The jury then left the courtroom.   The trial court asked counsel, "do you want to look over the verdict forms?"   Southworth's counsel responded "sure."

{¶37} Thus, although Southworth contends that he did not have an opportunity to

object until after the jury was discharged, that is not the case. The jurors had completed their deliberations *before* the trial court spoke with them. It was therefore incumbent upon Southworth to raise the issue with the trial court before the jury had been discharged.

{¶38} Southworth has therefore forfeited all but plain error. The Ohio Supreme Court has held that

> In appeals of civil cases, the plain error doctrine is not favored and may be applied only in the extremely rare case involving exceptional circumstances where error, to which no objection was made at the trial court, seriously affects the basic fairness, integrity, or public reputation of the judicial process, thereby challenging the legitimacy of the underlying judicial process itself.

*Goldfuss v. Davidson*, 79 Ohio St.3d 116, 679 N.E.2d 1099 (1997).

{¶39} After review, we find no plain error. The trial court read the jury's verdict in open court, and stated "this is a verdict in this case for defendants." The trial court then polled each juror, asking "is this your verdict." All eight jurors responded "yes." Although the jurors did not complete the verdict forms indicating that Mike Cogan and Scott Dille were personally liable, the jury also did not complete the verdict form for plaintiff. The verdict form for plaintiff included blank lines for the jury to fill in the amount of economic and noneconomic compensatory damages that the plaintiff would receive if the jury had, in fact, entered a verdict for plaintiff. The verdict form for plaintiff also had blank lines for the jury to check next to each defendant it found liable. By not completing this form, it is clear that the jury intended to find all defendants not liable, including Cogan and Dille.

**{¶40}** Accordingly, we conclude that this is not the "extremely rare case" that "seriously affects the basic fairness, integrity, or public reputation of the judicial process." Accordingly, there is no plain error on the part of the trial court for entering a verdict for all defendants.

**{¶41}** Southworth's second assignment of error is overruled.

III.

**{¶42}** In his third assignment of error, Southworth argues that the trial court erred when it limited his cross-examination of Michael Cogan. We set forth the law and standard of review regarding cross-examination in Southworth's first assignment of error.

**{¶43}** In this case, as part of Southworth's case-in-chief, he cross-examined several witnesses, including Cogan, before they testified on direct-examination for defendants. After Southworth completed his case-in-chief, defendants questioned Cogan (days after he had testified for Southworth) as part of their case-in-chief. When Cogan was done testifying on direct-examination, Southworth recross-examined Cogan. During this recross-examination, after questioning Cogan for approximately 20 minutes, Southworth's counsel asked Cogan, "I'm going to ask you, sir, is it your testimony that you didn't have any preconceived notions at all about who you would select as part of the process before you did the analysis contained in [the RIF job elimination worksheet]." At that point, defendants objected. The trial court sustained the objection, stating at sidebar:

That is the identical question you asked, you literally asked it at least 20 times during the course of your cross-examination. By my calculations this man has been on the stand for seven plus hours. We're getting to the point now where you have crossed him — you crossed him that first day, you crossed him almost seven hours. He's been on the stand, for the record, for a few hours, so ten plus hours. I mean, this is enough. We have to stop. Okay. So I'm giving you ten more minutes to cross this man, because if you aren't into new testimony, the same thing that you asked before, you're just spinning our wheels.

{¶44} The court went on to state, upon further argument by Southworth, that Southworth asked that same question "multiple times," emphasizing "I mean, multiple times is an understatement."

{¶45} We find no error on the part of the trial court in limiting Southworth's recross-examination of Cogan. Evid.R. 611(A) specifically gives trial courts discretion "over the mode and order of interrogating witnesses and presenting evidence," including avoiding needless consumption of time. Evid.R. 611(A)(2). Southworth had already crossed Cogan extensively during his case-in-chief. During Southworth's inital cross-examination of Cogan, the trial court did not limit Southworth's questioning in any way. And as the trial court explained during recross-examination, and we have independently verified, Southworth asked Cogan that same question repeatedly during his initial cross-examination.

{¶46} Thus, the trial court did not abuse its discretion when it limited Southworth's recross-examination to new areas that were raised on direct-examination.

{¶47} Southworth's third assignment of error is overruled.

IV.

**{¶48}** In his fourth assignment of error, Southworth maintains that the trial court erred when it denied his motion for a new trial.

**{¶49}** "Whether to grant or deny a motion for a new trial rests with the sound discretion of the trial court, and its judgment will not be disturbed absent an abuse of discretion." *Drehmer v. Fylak*, 163 Ohio App.3d 248, 2005-Ohio-4732, 837 N.E.2d 802, ¶ 8 (2d Dist.), citing *Yungwirth v. McAvoy*, 32 Ohio St.2d 285, 291 N.E.2d 739 (1972).

**{¶50}** Southworth maintains that the trial court erred when it denied his motion for new trial for three reasons: (1) because the trial court erred when it permitted defendants to introduce Ex. MMMMMM (the list of Southworth's Northern Trust clients), (2) because the jury failed to complete the verdict forms for Cogan and Dille, and (3) because the trial court limited his recross-examination of Cogan. These are the same issues he raised in his first three assignments of error. Because we found no error on the part of the trial court in any of these areas, we also find no error on the part of the trial court in denying Southworth's motion for a new trial.

**{¶51}** Southworth's fourth assignment of error is overruled.

**{¶52}** Judgment affirmed.

It is ordered that appellees recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate be sent to said court to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
MARY J. BOYLE, PRESIDING JUDGE

FRANK D. CELEBREZZE, JR., J., CONCURS;
LARRY A. JONES, SR., J., CONCURS IN JUDGMENT ONLY